# IN THE SUPREME COURT OF IOWA

No. 20 / 06-1754

Filed April 13, 2007

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD**,

      Complainant,

vs.

**KERMIT LEE DUNAHOO**,

      Respondent.

_____

On review of the report of the Grievance Commission.

Grievance Commission reports respondent violated DR 1-102(A)(1), DR 6-101(A)(3), and DR 9-102(B)(3) and recommends public reprimand. **RESPONDENT REPRIMANDED.**

Charles L. Harrington and Wendell J. Harms, Des Moines, for complainant.

Kermit Dunahoo, Des Moines, pro se.

**HECHT, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint against Kermit Dunahoo alleging he violated several Iowa Rules of Professional Responsibility: DR 1-102(A), DR 6-101(A), DR 7-101(A), DR 7-102(A)(8), and DR 9-102(B)(3). Dunahoo and the Board filed a stipulation of facts. The Grievance Commission adopted the parties' stipulation of facts, concluded Dunahoo violated DR 1-102(A), DR 6-101(A), and DR 9-102(B)(3), and recommended a public reprimand. Upon our de novo review of the Commission's findings and recommendation, we find Dunahoo violated DR 1-102(A)(1), DR 6-101(A)(3), and DR 9-102(B)(3) and impose a public reprimand.

## I.    Background Facts.

We find the following facts by a convincing preponderance of the evidence.

*A)    Wheeler Matter.*

Phillip Wheeler retained Dunahoo to represent him with regard to a charge of operating while intoxicated (OWI), second offense. Neither Wheeler nor Dunahoo attended Wheeler's arraignment scheduled for July 11, 2000. The court continued the arraignment. The same day, Dunahoo filed Wheeler's written arraignment, waiver of speedy trial and plea of not guilty. Wheeler later changed his plea to guilty and received the mandatory minimum sentence.

Wheeler paid Dunahoo $1100 as an initial retainer. On four occasions, Dunahoo withdrew funds from Wheeler's trust account, but did not provide an accounting to Wheeler.

*B)    Winter Matter.*

Victoria and James Winter hired Dunahoo to handle the estate of their father, Luke Winter, who died testate on April 4, 1996. Dunahoo

opened the estate on February 18, 1997. The clerk of court issued a probate delinquency notice in December of 2000 because the estate had not been closed. Upon receipt of the notice, Dunahoo sought and obtained an order extending the time to cure the delinquency. Dunahoo discovered that the attorney who had been assisting him with the Winter estate had taken the Winter estate file with him when the attorney severed his relationship with Dunahoo's law firm. After meeting with no success in his effort to retrieve the firm's estate file, Dunahoo made copies of the court's file and hired an attorney from outside the firm to finish the work required to close the Winter estate. The estate was closed on May 1, 2001, with no pecuniary loss or delay in distribution of estate assets to the beneficiaries.

C) *Meyer Matter.*

Amy Meyer retained Dunahoo on July 12, 2000, to represent her in a dissolution of marriage action. Dunahoo filed an application for hearing on temporary custody, temporary child support and visitation on August 16, 2000. The Meyers were ordered to engage in mediation as to these temporary matters before September 9, 2000. A proposed stipulation requiring Meyer's husband to pay guideline-based temporary child support in the amount of $457.12 per month was prepared by Dunahoo and mailed to Meyer, but the document was never signed by the parties. Meyer contacted Dunahoo's office and disclosed that her husband would agree to pay no more than $300 per month for child support. A hearing on temporary matters was not held, however, because Meyer requested it be cancelled after she and her husband executed a handwritten agreement calling for Mr. Meyer to commence guidelines-based child support payments on January 1, 2001. Meyer expressed satisfaction with the agreement on temporary matters in a conversation with Dunahoo's legal assistant.

An associate attorney in Dunahoo's law firm began managing the case approximately one week prior to the pretrial conference, which was held on December 8, 2000. The associate attorney apparently relied upon opposing counsel to prepare a wage withholding order. Meyer's husband did not begin to pay child support on January 1, 2001, as he had agreed. He deceived his attorney and Meyer by representing that child support was being withheld from his paycheck. This deception caused Dunahoo's associate to make inquiries of the Child Support Recovery Unit and place telephone calls to opposing counsel seeking an explanation as to why Meyer was not receiving child support payments. By the time Meyer and Dunahoo's associate attorney discovered the truth, March had arrived. The parties continued to negotiate a resolution of their dispute as the March 22, 2001, trial date approached, and Meyer's husband agreed to pay child support retroactive to January 1. Settlement negotiations continued, and a draft of a proposed dissolution decree was prepared by Dunahoo's associate attorney. For reasons that are not clear in the record, the trial did not occur as scheduled, and Meyer terminated the attorney-client relationship. Meyer did not begin receiving child support payments from her husband until after Dunahoo and his associate withdrew as her attorneys on April 26, 2001.

## II.    Scope and Standards of Review.

Our review of attorney disciplinary proceedings is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Walker*, 712 N.W.2d 683, 684 (Iowa 2006). The Board must prove attorney misconduct by a convincing preponderance of the evidence. *Id.* This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard generally applied in civil cases. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004). If misconduct is proved, we "may impose

a lesser or greater sanction than the discipline recommended by the grievance commission." *Id.*

### III. Analysis.

*A) Failure to Account.*

DR 9-102(B)(3) requires attorneys to "[m]aintain complete records of all funds . . . of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them." Dunahoo failed to render an account to Wheeler, in violation of DR 9-102(B)(3). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dull,* 713 N.W.2d 199, 205 (Iowa 2006) (finding an attorney's failure to render a timely account to her client violated DR 9-102(B)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moonen,* 706 N.W.2d 391, 399 (Iowa 2005) (finding that an attorney "who took fees without accounting for his time" violated DR 9-102(B)); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland,* 577 N.W.2d 50, 57 (Iowa 1998) (concluding lawyers who accept advance fee payments must notify their clients in writing of the time, amount, and purpose of any withdrawal of the fee together with a complete accounting).

*B) Neglect.*

DR 6-101(A)(3) directs that attorneys shall not neglect clients' legal matters. The rule requires an attorney to attend to matters entrusted to his care and to do so in a reasonably timely manner. *See Dull,* 713 N.W.2d at 204 ("Application of the rule should require a lawyer to complete legal matters entrusted to him in a reasonably timely manner."); *Comm. on Prof'l Ethics & Conduct v. Freed,* 341 N.W.2d 757, 759 (Iowa 1983) (suspending an attorney's license for filing an appeal and taking no further action).

We find by a convincing preponderance of the evidence that Dunahoo neglected the Winter estate. Although Dunahoo assigned the file to a

person he describes as "a subordinate case attorney," he concedes that he remained ultimately responsible for the handling of the estate.[1]  Dunahoo failed to monitor the legal services provided to the estate until he was notified by the clerk of court on December 1, 2000, that the estate had not been closed.  The record contains no evidence tending to prove the estate involved complex matters.  As a consequence of Dunahoo's neglect of his professional responsibilities, the estate remained open for more than four years.

We disagree with the Commission's finding that the Board proved Dunahoo violated DR 6-101(A) by failing to attend Wheeler's arraignment.  Because Dunahoo filed a written arraignment on the day of the arraignment, we are not convinced Dunahoo neglected the Wheeler matter in a fashion that would constitute a violation of DR 6-101(A)(3).

We also disagree with the Commission's finding that Dunahoo neglected Meyer's interests.  Any error in assuming that a wage withholding arrangement was in place to increase the likelihood that Meyer's husband would pay child support was not the result of neglect of either Dunahoo or the attorney over whom he had managerial responsibility.  Acts or omissions resulting from mere inadvertence or errors of judgment made in good faith do not generally justify attorney discipline.  *Comm. on Prof'l Ethics & Conduct v. Rogers*, 313 N.W.2d 535, 536 (Iowa 1981).  Furthermore, DR 6-101(A)(3) does not proscribe mere delay.  Discipline is imposed under this

---

[1]Current Iowa Rules of Professional Conduct 32:5.1 (requiring a lawyer with managerial authority in a law firm to make reasonable efforts to ensure the firm has in effect "measures giving reasonable assurance that [other] lawyers in the firm conform to the Iowa Rules of Professional Conduct") and 32:8.4(a) (proscribing misconduct committed through the acts of another) were not in effect at the time of the occurrences that are the subject of this case.  However, we view the parties' stipulation that Dunahoo was responsible for the services provided to the clients in this case as a concession that he may be sanctioned for the neglect, if any, of the lawyer who performed the delegated work subject to his supervision under the rules of professional responsibility prevailing at the time the legal services were provided.

rule only if the attorney's conduct constitutes neglect. Although Meyer's receipt of child support payments was delayed until after the attorney-client relationship with Dunahoo was terminated, we are not persuaded under the circumstances of this case that the delay constituted neglect attributable to Dunahoo or the attorney working under his supervision.

  C)  *Failure to Represent a Client Zealously and Within the Bounds of the Law.*

  We note that although the Board alleged Dunahoo violated DR 7-101(A)(1)-(3) and DR 7-102(A)(8), the Commission made no findings of fact and stated no conclusions of law on the claim. DR 7-101(A)(1)-(3) provides that a lawyer "shall not *intentionally* . . . [f]ail to seek the lawful objectives of a client," "[f]ail to carry out a contract of employment," or "[p]rejudice or damage a client during the course of the professional relationship." (Emphasis added.) DR 7-102(A)(8) provides that a lawyer must not "*[k]nowingly* engage in other illegal conduct or conduct contrary to a disciplinary rule." (Emphasis added.) Because we find Dunahoo's conduct was neither "intentional" nor "knowing" as contemplated in these rules, we find no sanctionable violation of Dunahoo's duty to represent his clients zealously and within the bounds of the law.

  D)  *Other Misconduct.*

  DR 1-102(A)(1) provides that a lawyer must not "[v]iolate a disciplinary rule." DR 1-102(A)(6) provides that a lawyer must not "[e]ngage in any . . . conduct that adversely reflects on the fitness to practice law." Because Dunahoo has violated DR 6-101(A)(3) and DR 9-102(B)(3), and violation of these rules adversely reflects on his fitness to practice law, we conclude he violated DR 1-102(A)(1). *See Comm. on Prof'l Ethics & Conduct v. Durham*, 279 N.W.2d 280, 285 (Iowa 1979) ("Any violation of the Code of

Professional Responsibility necessarily reflects adversely on the fitness of an attorney to practice law.").

### IV. Sanction.

In determining an appropriate sanction, "we consider the respondent's fitness to continue in the practice of law, deterrence of others from similar conduct, and the assurance to the public that the courts will maintain the ethics of the profession." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Zenor*, 707 N.W.2d 176, 185 (Iowa 2005) (citation omitted) (internal quotation marks omitted). We also consider any aggravating and mitigating circumstances. *Id.*

Although the record does not support a finding of unreasonable delay in the distribution of the Winter estate's assets, the long delay in closing the estate did provoke the filing of a complaint by family members of the decedent. To his credit, once alerted by the clerk of court that the estate had not been closed, Dunahoo promptly sought and obtained an order extending the time to cure the default and hired an attorney to conclude the matter at Dunahoo's expense.

We also note that Dunahoo was cooperative with the Board throughout these proceedings and has accepted full responsibility for his conduct. However, cooperation is "expected and required" and therefore is not a significant mitigating circumstance. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell*, 650 N.W.2d 648, 653 (Iowa 2002).

Two aggravating circumstances are established in this case. First, Dunahoo has substantial experience in the practice of law. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Vinyard*, 656 N.W.2d 127, 131 (Iowa 2003) (citing *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gallner,* 621 N.W.2d 183, 188 (Iowa 2001); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wagner,* 599 N.W.2d 721, 730 (Iowa 1999)) (noting

substantial experience is an aggravating circumstance). Dunahoo has practiced law for approximately thirty-five years and has operated his own firm for twenty-five years. Second, he has a prior record of discipline for neglect. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams*, 623 N.W.2d 815, 819 (Iowa 2001) (noting prior violations of disciplinary rules are an aggravating circumstance). In 1999, Dunahoo was reprimanded for violation of DR 6-101(A)(3), EC 9-2 and DR 7-101(A)(3). Three months later, he was admonished for violating DR 6-101(A)(3). In 2005, he was again admonished for violating DR 6-101(A)(3).

Our decision to impose a public reprimand rather than a suspension is affected in this case by measures taken by Dunahoo in the years after the events that are the subject of this case. He no longer handles probate matters. Although his representations to the court that he has reduced the size of his practice, no longer has any associates to supervise, and will retire and close his practice in early 2007 do not diminish the significance of violations of the rules of professional responsibility, we conclude under the circumstances of this case a more severe sanction is not required to deter Dunahoo from future ethical misconduct.

### V.  Conclusion.

We conclude Dunahoo violated DR 1-102(A), DR 6-101(A)(3), and DR 9-102(B)(3). Under the circumstances of this case, we conclude a public reprimand is the appropriate sanction. The costs of this proceeding are assessed against Dunahoo in accordance with Iowa Court Rule 35.25(1).

**RESPONDENT REPRIMANDED.**