# IN THE SUPREME COURT OF IOWA

No. 14–0757

Filed February 27, 2015

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**VERLA JEAN BARTLEY,**

Appellant.

---

Appeal from the report of the Grievance Commission of the Supreme Court of Iowa.

The grievance commission reports an attorney violated several court rules and rules of professional conduct and recommends suspension. **LICENSE SUSPENDED.**

David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellant.

Charles L. Harrington and David J. Grace, Des Moines, for appellee.

**CADY, Chief Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged attorney Verla Jean Bartley with violating the rules of professional conduct based on neglect, misrepresentations, and trust account and fee violations in the representation of the executors in two separate estates. After reviewing a written stipulation entered into by the parties, the Grievance Commission of the Supreme Court of Iowa found Bartley violated several rules and recommended a 180-day suspension.

## I. Background Facts and Prior Proceedings.

Verla Jean Bartley was admitted to the Iowa bar in 1961. She rose to prominence in the profession over the years and was active in the state bar association. She has no prior disciplinary record. In 2002, she began practicing as "of counsel" with an Iowa City law firm and retired from the active practice of law in 2014.

The events leading to this disciplinary action against Bartley involved her conduct in serving as the attorney for the executors in two estate proceedings. In 2001, Bartley opened the Shepherd estate. She completed most of the work for the estate in a timely manner. She billed and collected fees for her work on the estate in late 2006. The fees were not approved by the district court at that time and were deposited directly into the firm's business account rather than the trust account. In February 2008, the final report for the estate was filed and the previously paid fees were approved, but the estate did not close at that time because, according to Bartley, the Iowa Department of Revenue had not issued the "Certificate of Acquittance from Income Tax." The court granted multiple extensions of time to file the certificate from the time of the final report through June 2013 without resolution. In reality, Bartley was unable to close the estate due to tax difficulties, including unfiled

returns and an unpaid creditor claim that remained outstanding until late 2013. In the course of trying to close the estate and then to resolving the tax returns and creditor-claim problems, Bartley made numerous misrepresentations to the court and members of her law firm regarding her actions. The misrepresentations included creating a false check purportedly paying the creditor claim, creating a letter from the bank indicating the false check was processed, and knowingly misrepresenting the status of the estate's tax returns to the court. The interlocutory reports to the court on the status of the estate also contained false information.

In 2005, Bartley opened the Gergis estate. Again, Bartley completed the majority of the estate in a timely manner. In 2005, 2007, and 2008, the estate's executor paid Bartley a total of $65,000 in fees from the estate for her services. The court did not approve the fees at the time any of the payments were made. The fees represented an amount that was approximately half of the maximum ordinary statutory fee. The fees paid in 2005 and 2008 were deposited directly into the firm's business account; and the 2007 fee, though initially deposited into the firm's trust account, was immediately transferred to the business account. The estate included a charitable trust and could not be closed until the necessary tax clearances from the Internal Revenue Service were received. The final clearance was not issued until March 14, 2013. On June 24, 2013, the court approved the final report. In the report, the court approved the fees previously collected by Bartley in 2005, 2007, and 2008. No additional fees were requested under an agreement with the executor.

The Shepherd estate was open under Bartley's direction from March 2001 through 2013, over twelve years, including over five years

after the final report was filed with the court. The Gergis estate was opened in May 2005 and closed in June 2013, just over eight years later. The court granted numerous extensions in both estates.

In November 2012, the court informed a partner in Bartley's law firm of its concerns regarding her conduct in the Shepherd and Gergis estates. The partner discussed the problems with Bartley. This discussion prompted Bartley to send a letter to the Board dated January 23, 2013, to self-report her neglect on a tax matter for the Shepherd estate, her conduct in collecting fees from the Gergis estate without a court order, and her neglect in handling the tax matters in the Gergis estate.

On April 29, 2013, a formal complaint was filed with the commission. The Board amended the complaint once in October after reviewing case files and a second time at the end of November in response to a letter from a partner in Bartley's law office documenting ongoing violations that had occurred subsequent to Bartley's self-report.

## II. Board Complaint.

The Board charged Bartley with multiple violations of the rules of professional responsibility, Iowa court rules, and statutes. Count I included all the violations resulting from her actions with the Shepherd estate. She was charged with violations of Iowa Code section 633.198 (2013) (court determination of probate fees); Iowa Court Rules 7.2 (probate fees) and 45.7 (advance fee deposit requirement); Iowa Rules of Professional Conduct 32:1.3 (2014) (reasonable diligence), 32:1.5(a) (payment of fees), 32:1.15 (trust account), 32:3.3(a)(1) (candor with tribunal), 32:8.4(c) (dishonest, fraudulent, or deceitful conduct), and 32:8.4(d) (prejudice to the administration of justice); and for actions predating the 2005 rules change, Iowa Code of Professional

Responsibility for Lawyers rules DR 1–102(A)(5) (prejudice to administration of justice), DR 1–102(A)(6) (fitness to practice law), and DR 6–101(A) (failure to act competently). Count II, concerning the Gergis estate, charged violations of Iowa Code section 633.198; Iowa Court Rules 7.2 and 45.7; and Iowa Rules of Professional Conduct 32:1.3, 32:1.5(a), 32:1.15, and 32:8.4(d).

Bartley and the Board entered into a written stipulation rather than proceeding to an evidentiary hearing before the commission. As to the Shepherd estate, she agreed she failed to perform her responsibilities with reasonable diligence, made misrepresentations to the court and her law firm regarding tax matters and creditor claims, received attorney fees without court approval, and either did not deposit those fees in the trust account or withdrew them prematurely. In the Gergis estate, Bartley stipulated that she failed to exercise reasonable diligence and preparation, received attorney fees without court approval, failed to deposit fees into the trust account, and prematurely withdrew fees from the trust account. The Board and Bartley also stipulated to a recommended sanction of a sixty-day suspension from the practice of law.[1] The commission accepted the stipulated violations. However, it concluded the number and nature of the violations warranted more than a sixty-day suspension and recommended the court suspend Bartley for 180 days with a supervision condition upon reinstatement.

### III. Scope of Review.

" 'We review attorney disciplinary matters de novo.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carter*, 847 N.W.2d 228, 231 (Iowa 2014) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lemanski*, 841

---

[1]An additional factual stipulation in the agreement was Bartley's "retire[ment] from the active practice of law as of January 1, 2014."

N.W.2d 131, 133 (Iowa 2013)); *see also* Iowa Ct. R. 35.11(1) ("Upon submission, the supreme court shall proceed to review de novo . . . ."). Attorney misconduct must be proven by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 651 (Iowa 2013). "We respectfully consider the commission's findings and recommendations, but they do not bind us." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wheeler*, 824 N.W.2d 505, 509 (Iowa 2012). Although stipulations of fact are binding on the parties, stipulations to violations and sanctions are not binding on us. *Clarity*, 838 N.W.2d at 651.

## IV. Violations.

Bartley's conduct falls into three general categories of violations of the rules of professional conduct: neglect, fee-payment violations, and misrepresentation. We will discuss each category separately.

**A. Neglect.** Neglect "involves an attorney's failure to perform obligations assumed for the client, or a conscious disregard for the responsibilities a lawyer owes to a client." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 794 N.W.2d 290, 293 (Iowa 2011) (internal quotation marks omitted). One duty of an attorney for an executor is to close the estate in a timely manner. Generally, estates must be closed within three years unless otherwise ordered by the court. Iowa Code § 633.473. In the Shepherd estate, Bartley failed to timely file tax returns and neglected to settle an outstanding debt for a period of over twelve years. Likewise, her neglect delayed the closing of the Gergis estate for five years. Although the court extended the time to close the estates in both cases and some extension of the statutory period may have been necessary for the proper administration of the estates, the

record shows very little work was done to close the estates once the bulk of the estates was settled and the fees collected.

Bartley's conduct in the Shepherd estate, particularly from 2008 onward, clearly violated the requirement of Iowa Rule of Professional Conduct 32:1.3 that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." *Accord* Iowa Code of Prof'l Responsibility DR 6–101(A)(2)–(3) ("A lawyer shall not . . . [h]andle a legal matter without preparation adequate in the circumstances [or] [n]eglect a client's legal matter."). The five-year delay in the closing of the Shepherd estate after the filing of and approval by the court of the final report "amounted to conduct prejudicial to the administration of justice." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 103 (Iowa 2012); *see also* Iowa R. Prof'l Conduct 32:8.4(d) (2014) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice . . . ."); Iowa Code of Prof'l Responsibility DR 1-102(A)(5)–(6) ("A lawyer shall not . . . [e]ngage in conduct that is prejudicial to the administration of justice [or] [e]ngage in any other conduct that adversely reflects on the fitness to practice law."). In addition, the record shows Bartley failed to file her reports in a timely fashion during the last several years the estate was open and received numerous delinquency notices from the court.

Likewise, Bartley failed to take constructive action to resolve the tax issues in the Gergis estate for several years after completing most of the other work in the estate. She also failed to file timely reports after receiving delinquency notices. Yet, when a firm partner confronted Bartley with her delay in closing the estate, she was able to complete the work and close the estate within a matter of months. We conclude

Bartley did not act with reasonable diligence and promptness in the Gergis estate, violating Iowa Rule of Professional Conduct 32:1.3.

**B. Fee Payment.** Iowa Code section 633.197 describes the maximum ordinary fee for an executor or personal representative, and section 633.198 requires that probate attorney fees be determined by the court using the same calculation. *See* Iowa Code § 633.197–.198. Although Bartley calculated her fees within the statutory parameters, *see id.* § 633.197, the statute requires the fees to be set by the court, not the attorney or personal representative, *see id.* § 633.198. Furthermore, the statute does not contemplate court approval after the fee has been paid. *See id.*

Iowa Rule of Professional Conduct 32:1.15(c) requires any fees paid in advance to be deposited in a client trust account until earned or expenses incurred. *See also* Iowa Ct. R. 45.7 (same). Deposit slips clearly show the payment made for the Shepherd estate and two of the three payments for the Gergis estate were never deposited into her firm's client trust account, but instead were deposited directly into the firm business account. A probate attorney may be paid one-half of the fees after the filing of state inheritance and federal estate tax returns, but the remainder is not to be paid until the final report is filed unless otherwise ordered by the court. *Id.* r. 7.2(4). As no fees were approved by the court until 2008 for the Shepherd estate and 2013 for the Gergis estate, all four payments should have been held in the client trust account until approved. We find Bartley violated rule 32:1.15(c) by failing to deposit the client payments into the client trust account.

Probate fees received prematurely are prejudicial to the administration of justice. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ackerman,* 786 N.W.2d 491, 496–97 (Iowa 2010) ("Iowa Court Rule 7.2(4)

was enacted to promote the efficient administration of estates to ensure that the work was done prior to an attorney being paid."). "An attorney who takes the entire fee in violation of rule 7.2(4) commits a violation of rule 32:1.5(a)." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 433 (Iowa 2014). Bartley took full payment for her services on both estates several years before filing the final reports or receiving court orders for the fees. A subsequent approval of the fees by the court does not excuse the violation. *Id.* By taking fees years before court approval, Bartley violated Iowa Court Rule 7.2(4), Iowa Rule of Professional Conduct 32:1.5(a), and rule 32:8.4(d) in both the Shepherd estate and the Gergis estate.

**C. Misrepresentation.** A lawyer has a duty to be truthful to the court on any fact or law, to offer no false evidence, and to correct any material false statements made to the court. Iowa R. Prof'l Conduct 32:3.3(a); *id.* r. 32:8.4(c) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]"). Further, misrepresentations to the court can be inherently prejudicial to the administration of justice by depriving the court of information necessary to make decisions fairly. *See* Iowa R. Prof'l Conduct 32:3.3 cmt. 12 ("Lawyers have a special obligation to protect a tribunal against . . . fraudulent conduct that undermines the integrity of the adjudicative process . . . ."). "[H]onesty is crucial to the judicial process and the administration of justice . . . ." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett*, 653 N.W.2d 377, 380 (Iowa 2002); *cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields*, 790 N.W.2d 791, 796 (Iowa 2010) (finding misrepresentations to clients and court violated rules on prejudice to the administration of justice). However, when an attorney violates a specific rule like 32:3.3, the same conduct

cannot be used to find a violation of a general rule like 32:8.4(c).  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hearity*, 812 N.W.2d 614, 621 (Iowa 2012).

Bartley made a series of knowing misrepresentations to her law firm and the court about the completed status of tax returns for the Shepherd estate and made a number of misrepresentations to the court over a period of years concerning tax issues, the status of creditor claims, and the progress of the Shepherd estate in the interlocutory reports filed periodically.  Bartley continued to make misrepresentations even after she was under investigation by the Board.  Further, she fraudulently prepared documents to aid in her deceit to both the court and her firm.  We find these last deliberate misrepresentations to be violations of rule 32:3.3, and the misrepresentations in the interlocutory reports to be violations of rule 32:8.4(c).

### V.  Sanction.

In determining what sanctions should be imposed, we consider the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the attorney's fitness to continue practicing law, as well as any aggravating or mitigating circumstances.  *Wheeler*, 824 N.W.2d at 511.

Bartley and the Board stipulated to a sixty-day suspension of her license to practice law.  The commission decided not to follow the stipulation and recommended instead a suspension of Bartley's license for 180 days, as well as a requirement that a practicing attorney in good standing act as a supervisor of Bartley's cases following the suspension.  There is no standard sanction for a particular type of case, but instead the sanction depends on the particular circumstances of the case.  *Morris*, 847 N.W.2d at 435.

Our sanctions in neglect cases generally range from a public reprimand to a six-month suspension. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 812 N.W.2d 659, 666–67 (Iowa 2012) (noting that when neglect is the primary violation, public reprimand is often the sanction chosen). "We consider any harm to the client caused by the neglect in determining the proper sanction." *Thomas*, 794 N.W.2d at 294. We also consider whether the neglect was an isolated case or if there were multiple instances of neglect. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 868–69 (Iowa 2010). Neglect compounded by other offenses can result in suspensions for " 'substantial lengths of time.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 841 N.W.2d 114, 127 (Iowa 2013) (quoting *Hearity*, 812 N.W.2d at 622).

"We expect honesty in all aspects of the practice of law." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 465 (Iowa 2014). When an attorney is found to have made misrepresentations to the court and his or her law firm, sanctions often result in " 'a lengthy suspension.' " *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 294 (Iowa 2002) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein*, 603 N.W.2d 574, 576 (Iowa 1999)). We have found that misrepresentation is "a serious breach of professional ethics, warranting a more serious sanction than neglect." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 821 (Iowa 2007). Depending on the severity of the misrepresentations, we have imposed sanctions ranging from reprimand to license revocation. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 266, 269 (Iowa 2012) (misrepresenting progress of work and neglect resulted in a public reprimand); *Iowa Supreme Ct. Att'y Disciplinary Bd.*

*v. Hall*, 728 N.W.2d 383, 387 (Iowa 2007) ("Dishonesty, deceit, and misrepresentation by a lawyer are abhorrent concepts to the legal profession, and can give rise to the full spectrum of sanctions, including revocation.").

Ethical violations involving fees and trust account violations have resulted in sanctions ranging from a public reprimand to license revocation. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 588 (Iowa 2011). Fees taken early in probate matters, if otherwise earned, normally result in a public reprimand. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Smith*, 569 N.W.2d 499, 502–03 (Iowa 1997). License revocation is the result when the violations rise to the level of misappropriation of a client's funds. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Plumb*, 766 N.W.2d 626, 634 (Iowa 2009). Multiple violations not resulting in misappropriation will often result in license suspension. *Parrish*, 801 N.W.2d at 588.

The combination of the three violations has resulted in a wide range of suspensions. *See, e.g.*, *Van Ginkel*, 809 N.W.2d at 111 (imposing a sixty-day suspension for neglect, knowing misrepresentations to the court, and early receipt of fees); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 287–88 (Iowa 2009) (suspending license for six months for neglect, misrepresentations, and taking unearned fees on probate estates); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 62–63 (Iowa 2009) (imposing a three-month suspension for neglect, misrepresentation, and premature taking of probate fees); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Beek*, 757 N.W.2d 639, 643–44 (Iowa 2008) (suspending license for two years for multiple misrepresentations, including alteration of a will, collecting probate fee without court approval, trust account violations,

and neglect of client matters); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 738 N.W.2d 617, 620–21 (Iowa 2007) (imposing a minimum six-month suspension for neglect and misrepresentations on six estates and premature fee taken on three estates); *Gottschalk*, 729 N.W.2d at 821 (suspending license for one year for neglect resulting in client harm and misrepresentations); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Walker*, 712 N.W.2d 683, 684–86 (Iowa 2006) (neglecting three estates, a deed issue, and misrepresentations resulted in a six-month suspension).

Bartley has a number of mitigating factors in her favor in our consideration of sanctions. First, she has no prior disciplinary history during fifty-three years of practice. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bieber*, 824 N.W.2d 514, 527 (Iowa 2012) (recognizing lack of prior discipline as an important mitigating factor). No substantial harm was done to the clients in either estate, and they are supportive of the legal work Bartley performed for them. *See McGinness*, 844 N.W.2d at 467 (noting lack of harm to client as a mitigating factor). We also recognize the substantial service that Bartley has devoted to the Iowa State Bar Association and the leadership she has provided over the years. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iversen*, 723 N.W.2d 806, 811 (Iowa 2006) (finding devoted service to the profession a mitigating factor). Additionally, Bartley retired from the active practice of law as of January 1, 2014.

Bartley self-reported to the Board, which is normally a mitigating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thompson*, 732 N.W.2d 865, 868–69 (Iowa 2007) (finding attorney's recognition of wrongdoing is a mitigating factor). However, this mitigation is lessened somewhat when the self-reporting is at least in part motivated by knowledge that the law firm would otherwise be reporting the violation.

*See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Henrichsen*, 825 N.W.2d 525, 530 (Iowa 2013) (noting that self-reporting could be motivated by a desire to avoid a report by others). Further, the postreport misrepresentations to the court and Bartley's law office were reported by a partner of the firm rather than Bartley.

Aggravating factors are also present in this case. One factor is Bartley is an experienced attorney. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 730 N.W.2d 202, 207 (Iowa 2007) (finding substantial experience is an aggravating factor). This experience should have guided her away from the violations that occurred in this case. Additionally, multiple violations of disciplinary rules generally support enhanced sanctions. *See Parrish*, 801 N.W.2d at 588 (recognizing the possibility for enhanced sanctions for multiple violations). We have said multiple instances of neglect and other companion violations can be "[s]ignificant aggravating factors." *Id.* Moreover, misrepresentations made to a court exacerbate the breach of professional ethics. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 606 (Iowa 2011) (finding misrepresentation to be both a violation itself and to aggravate other violations). Further, Bartley continued to make misrepresentations to the court and her law firm of increasing magnitude even after notice of her violations and her self-report.

We also observe that the misrepresentation was not only the most serious unethical conduct engaged in by Bartley, but measured against a career that spanned more than half a century, it appeared to be the most uncharacteristic. Bartley consciously engaged in the misrepresentation to cover up her neglect and, in the process, only elevated the seriousness of her conduct and the degree of sanctions we are responsible to impose. We have observed this result in other lawyer discipline cases, and it is

one that all lawyers who face the prospect of discipline would be better off avoiding. *See McGinness*, 844 N.W.2d at 458–59, 465 (describing increasingly fraudulent conduct resulting in escalating attempts to cover up a relatively minor initial violation); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann*, 712 N.W.2d 89, 95 (Iowa 2006) ("A lawyer violates our disciplinary rules when the lawyer lies to cover up misconduct."); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein*, 586 N.W.2d 523, 526 (Iowa 1998) ("[T]he numerous misrepresentations made by Stein to cover up [his] neglect warrant a serious sanction.").

Considering all the relevant facts and circumstances, we agree with the recommendation of the commission that Bartley should receive a six-month suspension. We give careful consideration to our commission's recommendations. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Liles*, 808 N.W.2d 203, 206 (Iowa 2012) ("[A]lthough we are not bound by the commission's recommended discipline, we give its recommendation our respectful consideration."). A six-month suspension fairly balances the circumstances, as well as the mitigating and aggravating factors, and properly considers the goals behind the imposition of sanctions. The sanction also falls within the range imposed on attorneys in other cases of similar conduct.

We conclude Bartley shall be suspended from the practice law in this state with no possibility of reinstatement for a period of six months. She shall comply with all the requirements associated with a suspension. The costs of this proceeding are taxed against Bartley pursuant to Iowa Court Rule 35.27(1).

**LICENSE SUSPENDED.**