# IN THE SUPREME COURT OF IOWA

No. 21–1641

Submitted February 23, 2022—Filed April 22, 2022

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**SCOTT L. BIXENMAN,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends public reprimand based on violations of our attorney ethics rules. **LICENSE SUSPENDED.**

Appel, J., delivered the opinion of the court, in which all justices joined.

Tara van Brederode and Lawrence F. Dempsey, IV, Des Moines, for complainant.

Scott L. Bixenman, Le Mars, pro se.

**APPEL, Justice.**

In this disciplinary action, the Iowa Supreme Court Attorney Disciplinary Board (the Board) charged an Iowa attorney with violation of disciplinary rules: misconduct arising out of assault and child endangerment and, separately, failure to exercise reasonable diligence in responding to discovery requests, timely comply with court orders, and timely prepare a stipulation. On a stipulated record, the Iowa Supreme Court Grievance Commission (commission) found that Bixenman violated the ethics rules as charged by the Board. As a result of the violations, the commission recommended a public reprimand. On our de novo review, we agree with the commission that ethics rules were violated but conclude that Bixenman's license to practice law should be suspended for sixty days.

**I. Factual Background and Proceedings.**

**A. Introduction.** Scott Bixenman is an attorney licensed to practice law in the State of Iowa. He has practiced law in this state since 1996. He currently practices in Sioux City. On April 21, 2021, the Board filed a two-count complaint against Bixenman. The first count alleged misconduct for committing criminal acts in violation of Iowa Rule of Professional Conduct 32:8.4(b). The second count alleged lack of reasonable diligence and promptness in connection with Bixenman's representation of a client in a dissolution proceeding in violation of Iowa Rule of Professional Conduct 32:1.3. The Board and Bixenman agreed to a stipulation resolving factual and legal issues. In the stipulation, Bixenman agreed that he violated the ethics rules as alleged by the Board.

**B. Misconduct in Violation of Iowa Rule of Professional Conduct 32:8.4(b).** Iowa Rule of Professional Conduct 32:8.4(b) provides: "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."

The misconduct claim in this case arose out of a domestic conflict that occurred at Bixenman's home on January 9, 2020. According to the parties' stipulation, at about 10 p.m., Bixenman and his wife got into a shouting match in their bedroom about chores. The screaming was so loud that two children aged 13 and 11 came to check on the welfare of their mother. The older child thought Bixenman was about to assault his mother and he jumped on Bixenman. Bixenman pushed this child to the floor. Bixenman then realized that the younger child was filming the incident on her cell phone. When Bixenman ran toward the younger child to stop the filming, her older sibling came to her defense and confronted Bixenman. Bixenman "threw or pushed" the older child to the ground, who hit his head on a door frame and suffered a welt on his head. The children stated that Bixenman pushed their mother, grabbed a picture frame, and threatened to hit her with it.

The police were called and Bixenman was arrested. The original complaint charged him with assault causing bodily injury. On January 13, Bixenman contacted the Board to self-report his arrest, and on January 21 he filed a written self-report. On February 7, the state filed a trial information charging him with assault causing bodily injury under Iowa Code section 708.2(2) (2020) and child

endangerment under Iowa Code section 726.6(1)(*a*) and (7). According to the deferred prosecution agreement in the case, Bixenman was charged with domestic abuse assault, a simple misdemeanor, under Iowa Code section 708.2A, in a separate action.

Ultimately, Bixenman entered into a deferred prosecution agreement with the state on all three charges and was admitted to the Woodbury County Veterans Treatment Court program. Under the agreement, upon successful completion of the program the state agreed to dismiss the criminal charges against him.

In his self-report, Bixenman stated he suffers from anxiety and depression and believes that these conditions contributed to the incident that led to his arrest. At the time of the entry of the commission's findings of fact, conclusions of law, and recommendation, Bixenman was receiving mental health services as a part of the court-sponsored treatment program.

**C. Lack of Reasonable Diligence and Promptness Based on Iowa Rule of Professional Conduct 32:1.3.** Iowa Rule of Professional Conduct 32:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

The lack of reasonable diligence charge arose from Bixenman's representation in a family law matter. On March 21, 2018, Bixenman entered an appearance on behalf of a client in the dissolution of marriage action involving child custody modification. On November 5, 2019, the opposing party, proceeding pro se, served discovery requests on Bixenman's client. Bixenman

did not provide a response to the discovery, and on March 14, 2020, the opposing party filed a motion to compel. Bixenman did not resist the motion to compel, and on April 1, the district court entered an order granting the motion and requiring Bixenman to provide answers within fourteen days. The district court noted in its order that failure to provide the answers could lead to the imposition of sanctions.

Bixenman did not respond within the fourteen-day deadline. The opposing party filed another motion for sanctions. On May 5, the district court held a hearing. It declined to impose sanctions but ordered Bixenman to comply with the discovery by May 22. The district court further declared that by not filing timely responses, Bixenman had waived all objections to the discovery.

This time, Bixenman did file responses within the court-imposed deadline. The opposing party, however, regarded the answers as incomplete and claimed that certain documents requested had not been provided. The opposing party filed another motion for sanctions.

The district court held another hearing on discovery matters on July 7. The district court noted, "[I]t is clear that the Petitioner has only made a half-hearted effort at responding to the Respondent's discovery requests." The district court ordered that Bixenman provide the opposing party with a list of all witnesses he planned to call at trial with a detailed summary of their expected testimony, as well as all exhibits he intended to introduce by September 14. The district court further stated that Bixenman would be prohibited from introducing into evidence in his case-in-chief or in rebuttal regarding income, debts or

creditors, or daycare or babysitters, beyond the specific information provided by the deadline. Bixenman did not provide the list of witnesses or exhibits by the September 14 deadline as required by the court order.

The matter, however, proceeded to mediation where the parties came to an agreement. A mediator's report dated August 21, 2020, provides that Bixenman would "prepare the mediated stipulated agreement." Bixenman did not prepare the stipulated agreement.

On November 3, a new attorney appeared on behalf of Bixenman's client. Bixenman then withdrew from the matter.

**D. Sanctions Briefing Before the Commission.** According to the stipulation reached by the parties in this case, the record was closed unless the commission directed further proceedings. But in his pro se hearing brief, Bixenman provided what he characterized as supplemental facts and attached three documents for the commission's consideration that were not included in exhibits covered by the stipulation. We are troubled by this end-around of the stipulation and the ordinary hearing processes that include opportunities for discovery and cross-examination of witnesses.

But the Board did not object to what amounted to a reopening of the record, and it appears that the commission relied at least in part upon some of the facts asserted in Bixenman's brief in considering the proper sanction in this case. Under the circumstances, we conclude that the factual assertions in the pro se brief filed by Bixenman amounted to a professional statement and were properly before the commission. Further, the Board did not object to the

submission of the letters attached to Bixenman's brief. We therefore consider them as part of the record in this case.

In his pro se brief, Bixenman highlighted a long history of depression and anxiety beginning in his college years. He served nine years in the Iowa Army National Guard, including deployment in Iraq, Saudi Arabia, and Kuwait. Although he has not been diagnosed with post-traumatic stress disorder or service-related issues, Bixenman states that he had counseled about those mental health issues. Bixenman states that for a year and a half prior to the domestic assault incident he was seeking mental health treatment but had difficulty accessing various providers because of conflicts, relocation, termination of employment, and death. After calling the Iowa Lawyers Assistance Program, Bixenman found a treating physician. But Bixenman believes the medication prescribed by his physician had a negative effect on his anger and agitation. He asserts that after the domestic assault incident he received genetic testing and is now taking beneficial medications.

Following his arrest, Bixenman observes that his law partners of twenty-three years told him they no longer wanted to be associated with him. He left that practice and rented an office from a Sioux City practitioner, Donald Molstad. When Molstad tragically passed away, Bixenman took over the practice. Bixenman states he was able to keep the law office running and pay employees their normal salaries, but that his family lives month to month.

Bixenman asserts a suspension would impose further hardship on his family—the primary victims of his misconduct. He notes that with respect to his

family, "the embarrassment and hardship of having your husband and father led off in handcuffs, placed in jail, slathered all over social media, losing his job, and barely being able to make ends meet" is more than they should have to bear. As a result, Bixenman urges that the sanction in the case should be a public reprimand.

Bixenman attached three documents to his brief. He submitted a letter from a district court judge describing Bixenman's participation in the Woodbury County Veterans Treatment Court. Bixenman also provided a letter from his spouse, who described their reconciliation. A final document was a memo from the father of a daughter living in the Bixenman household that called the police about the domestic dispute in this case.

In its brief, the Board urged the commission to recommend a three-month suspension. The Board argued that this case is similar to *Iowa Supreme Court Disciplinary Board v. Deremiah*, 875 N.W.2d 728 (Iowa 2016). In *Deremiah*, we imposed a three-month suspension on an attorney who pleaded guilty to domestic assault with intent to inflict a serious injury as well as trespass causing bodily injury. *Id.* at 731, 740.

**E. Commission's Findings of Fact, Conclusions of Law, and Recommendation.** The commission determined based upon the stipulated record that Bixenman committed misconduct in violation of rule 32:8.4(b) and lack of reasonable diligence and promptness in violation of rule 32:1.3. The commission proceeded to consider the question of appropriate sanction.

As mitigating factors, the commission noted that Bixenman promptly self-reported his criminal charges, immediately recognized his wrongdoing, and cooperated with the investigation. The commission considered Bixenman's mental health and subsequent participation in mental health treatment as mitigating factors. Further, the commission cited a lack of prior discipline as a mitigating factor.

The commission also considered aggravating factors. The Board and Bixenman had stipulated that Bixenman's experience as an attorney was an aggravating factor to the negligence charge of the Board.

In its discussion of appropriate sanction, the commission also noted that we have recently adopted a requirement that attorneys take one hour of diversity or wellness continuing legal education each year. The commission noted that Bixenman had mental health issues prior to the incident and that the family had sought help prior to the unfortunate events, but Bixenman, for a variety of reasons, did not obtain the help he truly needed and deserved. The commission concluded that "not only did the system fail a fellow member of the legal profession, but the system failed a Veteran."

The commission also noted, as Bixenman had asserted in his brief, that he was a private attorney who had suffered the "embarrassment and hardship" of "being led off in handcuffs, placed in a jail cell for considerable time, his arrest smeared all over social media, losing a business that he had invested 23-years building, and more importantly having to make amends with his family." The

commission concluded that these collateral consequences were a mitigating factor in considering the sanctions in this matter.

In balancing all the relevant factors, the commission recommended a public reprimand.

**F. Sanctions Statement of the Board in This Proceeding.** While the Board initially sought a three-month suspension, the Board now accepts the commission's recommended sanction of public reprimand. However, the Board objects to the commission's reasoning in two respects. First, the Board rejects the commission's view that the new continuing legal education requirement related to wellness provides a new mitigating factor in this case. Second, the Board rejects the commission's view that the consequences of Bixenman's criminal acts, including embarrassment, shame, loss of his law partnership, and reputational damage, should be considered mitigating factors. The Board, however, states no objection to the commission's consideration of the statement of facts in Bixenman's brief and documents attached to it.

**II. Standard of Review.**

We review attorney disciplinary proceedings de novo. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Stowe*, 830 N.W.2d 737, 739 (Iowa 2013). The Board bears the burden of proving attorney misconduct by a convincing preponderance of the evidence. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Widdison*, 960 N.W.2d 79, 87 (Iowa 2021). "We respectfully consider the commission's findings and recommendations, but are not bound by them." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Engelmann*, 840 N.W.2d 156, 158 (Iowa 2013). "If we find a violation, we

'may impose a lesser or greater sanction than the discipline recommended by the grievance commission.' " *Id.* (quoting Iowa Ct. R. 35.11(1)).

**III. Discussion.**

**A. Violations.** In this case, Bixenman has stipulated to the two violations alleged by the Board. "Although stipulations of fact are binding on the parties, stipulations to violations and sanctions are not binding on us." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Bartley*, 860 N.W.2d 331, 335 (Iowa 2015).

At the outset, we conclude that the stipulation in this case provides ample support for the commission's findings that Bixenman committed misconduct in violation of rule 32:8.4. With respect to the charges of assault causing bodily injury and child endangerment, we have repeatedly found that violence leading to criminal charges against an attorney amounts to misconduct under the rule. *E.g. Deremiah*, 875 N.W.2d at 732; *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 40 (Iowa 2011); *Comm. on Prof'l Ethics & Conduct v. Patterson*, 369 N.W.2d 798, 799–801 (Iowa 1985) (en banc).

In *Iowa Supreme Court Attorney Disciplinary Board v. Templeton*, we emphasized that in order to be a violation of a disciplinary rule, the infraction must have a nexus with the practice of law. 784 N.W.2d 761, 768–69 (Iowa 2010). In *Deremiah*, however, we emphasized the link between domestic assaults and lawyers who practice family law. 875 N.W.2d at 737. We noted that "[a] family lawyer must protect clients from acts of family violence, not commit them." *Id.* Like *Deremiah*, Bixenman practices in the field of family law. Moreover, Bixenman's commission of the crimes of assault with bodily injury and child

endangerment, like crimes arising out of domestic abuse, are directly related to his specific area of practice.

We now turn to the question of whether Bixenman's conduct amounted to lack of reasonable diligence in violation of rule 32:1.3. We have emphasized that the rule is not violated by one mere mistake or a missed deadline. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Joy*, 728 N.W.2d 806, 812 (Iowa 2007). In contrast to an isolated error, neglect involves "a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 867 (Iowa 2010) (quoting *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551 (Iowa 2004)). Here, Bixenman's repeated failure to produce discovery responses harmed his client. When Bixenman failed to timely produce discovery, the district court on May 20, 2020, found he had waived any objections on behalf of his client and ordered him to answer discovery fully. Further, when Bixenman did not produce the discovery by a September 14 deadline established by the district court, the district court ruled that unproduced or unidentified evidence would not be admissible at trial. Lastly, Bixenman did not prepare mediation documents as agreed to by the parties, leading his client to seek counsel elsewhere. We think lack of diligence to the detriment of the client has been demonstrated by the record. *See, e.g., Iowa Sup. Ct. Att'y Disciplinary Bd. v. Noel*, 933 N.W.2d 190, 198–99 (Iowa 2019) (stating rule violated where "the attorney 'fails to appear at scheduled court proceedings, does not make the proper filings, or is slow to act on matters' " (quoting *Iowa*

*Sup. Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 537 (Iowa 2013))); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kingery*, 871 N.W.2d 109, 117–18 (Iowa 2015) (citing failure to file documents on time and ignoring a default notice as violation of the rule); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Conroy*, 845 N.W.2d 59, 64 (Iowa 2014) (finding violation of rule for "repeatedly missing deadlines").

**B. Sanction.**

1. *Introduction.* The central question here is one of appropriate sanction. In cases involving domestic abuse, we have noted that sanctions have "ranged from a suspension of two months to a suspension of two years depending on the nature and extent of other misconduct proved by the board in the same case." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Axt*, 791 N.W.2d 98, 102 (Iowa 2010). In cases involving neglect, sanctions "typically range from a public reprimand to a suspension of up to six months." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 108–09 (Iowa 2012).

We have rejected per se rules, however, and consider the totality of facts and circumstances in each individual case in determining sanctions. *Deremiah*, 875 N.W.2d at 737 (rejecting per se rules but noting the court sometimes refers to general ranges of sanctions arising from certain types of misconduct); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 332 (Iowa 2009) (noting that form and extent of sanction "must be tailored to the specific facts and circumstances of each individual case" (quoting *Comm. on Prof'l Ethics & Conduct v. Rogers*, 313 N.W.2d 535, 537 (Iowa 1981) (en banc))); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Weaver*, 750 N.W.2d 71, 79 (Iowa 2008) (noting need to avoid

per se rules or mechanical application of labels in disciplinary cases). In considering the proper sanction, in addition to considering the facts and circumstances of the violation, we also consider aggravating and mitigating factors. *E.g. Iowa Sup. Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 61–62 (Iowa 2009) (per curiam).

2. *Mitigating factors.* The record reflects that Bixenman entered Woodbury County Veterans Treatment Court and has accessed appropriate mental health counseling. We have repeatedly said that recognizing a mental health problem and seeking treatment for it, though not an excuse, may be a mitigating factor when we consider sanctions for violations of our disciplinary rules. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 221 (Iowa 2016); *Schmidt*, 796 N.W.2d at 39, 44–45.

The commission further believed, however, that our recent amendments to our continuing legal education requirements to require periodic training in diversity or wellness is an additional mitigating factor. *See* Iowa Ct. R. 41.3(2). We disagree. While we have determined to be more proactive in ensuring that attorneys are aware of wellness issues generally, this action was not designed to lessen sanctions in our disciplinary system due to misconduct. As pointed out by the Board, we require continuing legal education on the subject of legal ethics generally. The fact that we require such education does not lessen the sanctions for violations of our disciplinary rules.

The commission also believed that unsuccessful attempts by Bixenman prior to his criminal charges to access quality mental health treatment reflected

a failure of the system and amounted to a mitigating factor. We agree that attorneys should be encouraged to obtain mental health treatment. But here Bixenman offered no medical testimony about his preexisting illness and the impact of his efforts to obtain treatment prior the incident of domestic violence. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Cannon*, 821 N.W.2d 873, 878 (Iowa 2012) (explaining depression and substance abuse are not excuses, especially without medical evidence of their effect); *Schmidt*, 796 N.W.2d at 41 (noting lack of medical evidence as to how depression affected his mind and decision-making); *Patterson*, 369 N.W.2d at 801 (observing that attorney offered no professional opinion that he lost reason and had no recollection of event).

Another mitigating factor is the cooperation of Bixenman with the Board in this matter. With respect to his criminal charges, Bixenman self-reported to the Board within days of his arrest. He accepted responsibility for his actions when he stipulated with the Board that he engaged in misconduct and neglect under our disciplinary rules. Cooperation with the Board and acceptance of responsibility by an attorney are mitigating factors in considering proper discipline. *Kingery*, 871 N.W.2d at 122 (considering remorse as a mitigating factor).

We have also recognized that lack of prior discipline is a mitigating factor. *Bartley*, 860 N.W.2d at 339. In this case, Bixenman has no prior disciplinary history.

The commission suggests that the pain and embarrassment that flowed from his arrest, resulting publicity, and loss of his law partnership is a mitigating

factor that we should consider. As has been noted elsewhere, this "time served" rationale is present in nearly all disciplinary proceedings. *In re Conduct of Morrow*, 688 P.2d 820, 825 (Or. 1984) (en banc) (per curiam); *In re Conduct of Houchin*, 622 P.2d 723, 726 (Or. 1981) (en banc) (per curiam).

Nonetheless, there is some authority in other jurisdictions for taking financial consequences or loss of job flowing from attorney misconduct into account in disciplinary proceedings. *In re Drucker*, 968 N.Y.S.2d 587, 591 (N.Y. App. Div. 2013) (per curiam) (considering financial loss as a factor); *In re Disciplinary Matter Involving Schuler*, 818 P.2d 138, 144 (Alaska 1991) (considering job loss as a factor). And, in *Iowa Supreme Court Attorney Disciplinary Board v. Barnhill*, we held that where punitive damages from a court arise from conduct that subjects an attorney to discipline, the damages may be a mitigating factor in determining the sanction for professional misconduct. 847 N.W.2d 466, 487 (Iowa 2014) (noting that because punitive damages and attorney discipline share the same goal of protecting the public by deterring future conduct, an award of punitive damages may be considered a mitigating factor).

But the collateral harms experienced by Bixenman here were not a penalty imposed by public authorities as in *Barnhill*. In *Iowa Supreme Court Attorney Disciplinary Board v. Watkins*, we declined to consider the loss of a part-time job as a county attorney and a tarnished reputation in a sexual harassment case, where we emphasized the need to protect the reputation of the legal community in the eyes of the public. 944 N.W.2d 881, 893–94 (Iowa 2020). As noted by one

court, embarrassment and diminished reputation are no substitute for the responsibility of the court to enforce lawyer disciplinary rules. *See Att'y Grievance Comm'n of Md. v. Goldsborough*, 624 A.2d 503, 512 (Md. 1993); *see also Fla. Bar v. Ticktin*, 14 So. 3d 928, 939 (Fla. 2009) (per curiam) (rejecting embarrassment and personal financial loss flowing from lawyer misconduct as mitigating factor).

We conclude that the severity of sanctions in attorney discipline cases involving assault with bodily injury and child endangerment arising in a family context should not turn on inevitable collateral consequences but should reflect the seriousness of the offense, the need for deterrence, and our role of upholding the integrity of the legal profession in the eyes of the public. *Watkins*, 944 N.W.2d at 893–94; *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Stansberry*, 922 N.W.2d 591, 598 (Iowa 2019). We do not assign the collateral consequences experienced by Bixenman to be a substantial mitigating factor in this case.

3. *Aggravating factors.* Bixenman is an experienced Iowa attorney. We have said that experience is an aggravating factor, particularly on the issue of neglect in this case. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Barnhill*, 885 N.W.2d 408, 424–25 (Iowa 2016); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 675 (Iowa 2013).

4. *Proper sanction.* After considering the nature of the offenses and the aggravating and mitigating factors, we conclude that a suspension of sixty days is the proper sanction for the violations in this case. At the outset, we have said that domestic abuse by lawyers "is out-of-bounds conduct that will not be

tolerated by this court." *Deremiah*, 875 N.W.2d at 739. In *Iowa Supreme Court Attorney Disciplinary Board v. Schmidt*, 796 N.W.2d at 45, we suspended a lawyer's license for thirty days for misconduct arising out of a domestic assault, but in *Deremiah*, 875 N.W.2d at 739, we stated that in cases involving domestic assault that we were determined to increase the sanction as compared to our prior caselaw. In *Deremiah*, under facts more egregious than those presented here, we suspended the lawyer's license for three months. *Id.* at 740.

Although emphasizing the necessity of case-by-case consideration, we have declared from time-to-time that a suspension for domestic cases may be necessary to deter misconduct and promote the public trust in the legal profession. *See Axt*, 791 N.W.2d at 102–03. The fright and terror involved in domestic abuse is antithetical to legal profession. We note that cases in other jurisdictions have imposed suspensions in such cases. *See, e.g., In re Bowman*, 111 So. 3d 317, 324–25 (La. 2013) (per curiam) (suspending license for six months with all but thirty days deferred for domestic abuse in the presence of a child); *In re Grella*, 777 N.E.2d 167, 173–74 (Mass. 2002) (imposing suspension for two months for misdemeanor assault and battery against attorney's estranged wife); *In re Disciplinary Proc. Against Gorokhovsky*, 840 N.W.2d 126, 131 (Wis. 2013) (per curiam) (giving sixty-day suspension for two acts of domestic abuse). Longer suspensions have been imposed in some circumstances. *See, e.g., In re Cardenas*, 60 So. 3d 609, 610, 615 (La. 2011) (per curiam) (imposing one-year suspension, with six months deferred, for misdemeanor domestic assault in presence of child); *State ex rel. Okla. Bar Ass'n v. Faulk*, 496 P.3d 612, 614,

618–19 (Okla. 2021) (imposing two-year suspension where attorney pleaded guilty to felony and misdemeanor domestic violence offenses).

That said, we recognize the mitigating factors in this case. We note that Bixenman has attended to his mental health issues and has been an active participant in the Woodbury County Veterans Treatment Court. He certainly has accepted responsibility for his actions and cooperated fully with the Board in this matter. Yet we wish to send a clear message to lawyers and to the public that acts of domestic violence and child endangerment are simply not acceptable in the legal profession. We thus conclude that Bixenman's license should be suspended for sixty days. Our decision to suspend Bixenman's license for sixty days is reinforced by the unacceptable lack of reasonable diligence in the divorce matter.

## IV. Conclusion.

For the above reasons, we suspend the license of Bixenman to practice law for sixty days. The suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 34.23(3). Bixenman must comply with Iowa Court Rule 34.24 dealing with notification of clients and counsel. Costs of this action are taxed to Bixenman pursuant to Iowa Court Rule 36.24. Absent an objection by the Board and under the condition that Bixenman has paid all the costs assessed under rule 36.24(1), we shall reinstate Bixenman's license to practice law on the day after the sixty-day suspension period expires. *See id.* r. 34.23(1).

**LICENSE SUSPENDED.**