# IN THE SUPREME COURT OF IOWA

No. 11–0326

Filed August 5, 2011

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

     Complainant,

vs.

**ERIC K. PARRISH,**

     Respondent.

---

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports that respondent has committed ethical misconduct and recommends a public reprimand. **LICENSE SUSPENDED.**

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for complainant.

David L. Brown, Des Moines, for respondent.

**ZAGER, Justice**.

This attorney disciplinary proceeding comes before us on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.10(1). The Iowa Supreme Court Attorney Disciplinary Board alleges the respondent, Eric K. Parrish, violated multiple Iowa Rules of Professional Conduct as well as Iowa Court Rules. The basis of these violations involve his handling of his trust account for two clients in which Parrish withdrew funds from his trust account before they were earned, failed to promptly notify his clients of the withdrawals, did not earn the amounts withdrawn, and did not return the remainder of funds upon request.

The commission found Parrish violated several of the Iowa Rules of Professional Conduct and Iowa Court Rules. The commission recommended Parrish receive a public reprimand, be ordered to immediately refund the unearned fees, and attend continuing education classes on billing and timekeeping. Upon our consideration of the commission's findings of fact, conclusions of law, and recommendation, we find Parrish violated several of our ethical rules and suspend his license for sixty days.

## I. Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Keele*, 795 N.W.2d 507, 509 (Iowa 2011). The board must prove an attorney's ethical misconduct by a convincing preponderance of the evidence. *Id.* A convincing preponderance of the evidence is more than the preponderance standard required in a typical civil case, but less than proof beyond a reasonable doubt. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 36 (Iowa 2011). Although the commission's findings and

recommendations are not binding on us, we give them respectful consideration. *Id.* "Upon proof of misconduct, we may impose a greater or lesser sanction than the sanction recommended by the commission." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 764 (Iowa 2010).

## II. Findings of Fact.

The parties entered into a stipulation and agreement which stipulates numerous facts. A stipulation of facts is binding on the parties. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 803 (Iowa 2010). A hearing was conducted in this matter resulting in findings of fact, conclusions of law, and recommendation from the commission. Based upon our de novo review of the stipulation and agreement, and the hearing record, we find the following facts.

Parrish has been a licensed attorney in Iowa since July 1999. Parrish is licensed to practice law in the courts of this state and has maintained a law practice in Des Moines, Iowa, during all times material to this matter. During the past ten years, Parrish developed a practice in criminal defense and personal injury law. The board's complaint alleges Parrish engaged in multiple rule violations. The alleged misconduct primarily concerns trust account violations.

**A. Montgomery Ward Representation (Count I).** In June 2005, Montgomery Ward was arrested in Marion County, Iowa, on suspicion of selling methamphetamine. At the time, he was also a suspect in a theft case. On October 7, he was formally charged with possession of methamphetamine with the intent to deliver, a class "C" felony, and theft in the second degree, a class "D" felony.

Ward entered into an attorney fee agreement with Parrish on October 20, indicating Ward would be billed for Parrish's services at a

rate of $175 per hour. Ward's mother paid the Parrish Law Firm a $10,000 retainer, which Parrish deposited into the firm's trust account on October 21. Parrish filed an appearance for Ward in Marion County.

Between October 25 and December 7, Parrish withdrew fees and expenses from Ward's trust account on six separate occasions. Parrish's withdrawals totaled $10,000, Ward's entire retainer. Parrish did not provide Ward with a contemporaneous written notice of the withdrawals from the trust account or a complete accounting.

Parrish negotiated a plea agreement with the Marion County Attorney's Office. On June 30, 2006, Ward pled guilty to possession of methamphetamine, a serious misdemeanor, and theft in the second degree. At sentencing on August 11, Ward received a deferred judgment and two years of probation.

Immediately after sentencing, Ward requested a final bill. After numerous contacts to the Parrish Law Firm, Parrish finally provided Ward a final bill on March 9, 2007. This bill reflected a statement for fees and expenses incurred totaling $1532.54 with a credit balance of $8467.46. The statement informed Ward that as soon as he received the statement and agreed to its terms, the firm would send a refund of his retainer within 30 days. While Ward agreed to the statement, no refund was ever received by Ward, even after telephone and fax demands were made on Parrish by an attorney who was then representing Ward.

On July 23, Parrish sent Ward a revised billing statement for fees and expenses totaling $3693.54, with a credit balance of $6306.46. Parrish explained that the changes in the statement reflected that he had used the wrong hourly rate in his previous billing. On September 25, Parrish sent a second revised billing statement for fees and expenses totaling $3008 with a credit balance of $6992. On October 9, Parrish

sent a letter to Ward's attorney indicating he would be providing a refund based upon his previous billing statements. Parrish never issued a refund.

Parrish sent yet another billing statement, which was created on November 15, claiming Parrish had earned $3020 and Ward had a credit of $6980. After no resolution to the fee dispute, Ward filed a complaint against Parrish with the Polk County Fee Arbitration Committee on December 17. Both Ward and Parrish participated in the hearing before the committee. On January 5, 2009, the committee determined Parrish had earned $1532.54 in fees and expenses and directed him to refund $8467.46 to Ward. No refund has been issued.

After Parrish's adverse arbitration decision, and after Ward filed a complaint against Parrish with the board, Parrish undertook a review of Ward's file for the purpose of providing more complete billing information to the board. Upon completing his review, Parrish provided a billing statement, dated May 12, 2009, which indicated he had earned $10,325.01 for his work in representing Ward. At his disciplinary hearing, Parrish explained that he believed he earned the entire $10,000 retainer during his representation of Ward. Parrish contended that his billing statements did not fully reflect the actual amount of work he conducted in the case. However, Parrish acknowledged his system for tracking the hours he worked was not adequate and further admitted that he could not provide the commission with an accounting. Parrish also acknowledged that he did not provide a contemporaneous accounting of the amounts he withdrew from the trust account. Lastly, Parrish acknowledged that no refund has yet been issued to Ward.

**B. James Bixler Representation (Count II).** In August 2009, James Bixler retained Parrish to represent him in a South Dakota matter

involving a criminal charge for possession of cocaine and the civil forfeiture of Bixler's Harley Davidson motorcycle. On August 11, Bixler signed a fee agreement retaining Parrish at an hourly rate of $175. Bixler paid a $5000 retainer, which was deposited into the firm's trust account on August 12. On September 28, Bixler paid Parrish an additional $3000.

After being retained, Parrish conducted research into South Dakota law and had some communication with officials in South Dakota. Parrish was not able to negotiate a plea agreement. Bixler's motorcycle was also forfeited, although this forfeiture was later set aside.

On October 5, Bixler terminated Parrish's representation in both the criminal and civil matters. Bixler requested a full refund of his $3000 payment and also requested a refund of the unused portion of his $5000 retainer. On October 8, Parrish provided a full refund of the $3000 payment. He did not provide a refund or an accounting regarding the $5000 retainer.

The records reflect that Parrish withdrew fees from Bixler's trust account on four separate occasions between August 10 and October 21. Based upon a billing statement Parrish provided on March 10, 2010, the records reflect that Parrish withdrew more in fees than what he had earned. Parrish also did not provide Bixler with a contemporaneous written notice when he withdrew these funds. Lastly, Parrish's March 10 billing statement shows Bixler was charged, at times, an hourly rate of $200 per hour as opposed to the $175 per hour rate specified in the fee agreement. Parrish acknowledges that a refund is owed to Bixler, but he has refunded no money to him.

**III. Ethical Violations.**

**A. Client Funds/Trust Account and Accounting.** The board alleged Parrish violated rules 32:1.5(a), 32:1.15(c), (d), and (f), as well as rule 32:1.16(d). Rule 32:1.15(f) incorporates Iowa Court Rules 45.7(3) and 45.7(4). We will address these alleged rule violations together because they all apply to the handling of client funds.

Rule 32:1.5(a) prohibits counsel from making an agreement for or collecting "an unreasonable fee." Rule 32:1.15 reads in relevant part:

> (c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

> (d) Upon receiving funds or other property in which a client or a third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or a third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

> . . . .

> (f) All client trust accounts shall be governed by chapter 45 of the Iowa Court Rules.

Rule 32:1.16(d) provides upon termination of representation, a lawyer shall refund any advance payment of fee or expense that has not been earned or incurred.

Iowa Court Rules 45.1, 45.2(2), 45.3, 45.4, and 45.7 generally set forth the details a lawyer needs to know and follow when administering his or her trust accounts. These rules generally require a lawyer to place client funds into a separate subaccount, withdraw payment from the trust account only once the fee is earned, notify the client when the attorney anticipates making a fee withdrawal, and provide the client a

complete accounting of any such withdrawal. The attorney must also transmit the notice of such withdrawal and accounting no later than the date of withdrawal.

From this court's de novo review of the record, we find the convincing preponderance of the evidence establishes that Parrish has violated several ethical rules. Pursuant to *Iowa Supreme Court Board of Professional Ethics and Conduct v. Apland*, 577 N.W.2d 50, 55 (Iowa 1998), the $10,000 fee paid by Ward and the $5000 fee paid by Bixler to Parrish were both "advance fee payments." These funds remain the property of Ward and Bixler until Parrish earned them. *Id.*

Rule 32:1.5(a) provides that a lawyer shall not charge or collect an unreasonable fee or violate any restrictions imposed by law. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo*, 619 N.W.2d 333, 337 (Iowa 2000). "[T]aking fees in advance of earning them is illegal." *Id.* (referring to former Iowa Code of Professional Responsibility for Lawyers DR 2–106(A)). It is also illegal to fail to return unearned portions of advance fees. *See Apland*, 577 N.W.2d at 58 (determining failure to return unearned portion of advance fees constitutes collection of an excessive fee under the same rule). We find Parrish withdrew Ward and Bixler's entire advance fees before they had been earned and then subsequently failed to return the unearned portions. As such, he collected an unreasonable fee in violation of rule 32:1.5(a).

We also find Parrish violated rule 32:1.15(c) and rule 45.7(3) by withdrawing funds from the trust accounts before the fees were actually earned. *See* Iowa R. Prof'l Conduct 32:1.15(c) (withdrawing fees only as earned); Iowa Ct. R. 45.7(3) (same). Parrish stipulates to withdrawing fees in both the Ward and Bixler matters before earning them. The record supports the stipulation.

We find Parrish violated rule 32:1.15(d) and rule 32:1.16(d) in the Ward matter by failing to render an appropriate accounting and failing to return advance payments which had not been earned. Ward immediately requested a final bill following his sentencing on August 11, 2006. After numerous telephone calls to Parrish's office and other correspondence, Ward received a billing statement for fees and expenses totaling $1532.54. However, Parrish had withdrawn Ward's entire $10,000 fee advance from the trust account by December 7, 2005. Clearly, Parrish had not yet earned these fees. Even after several attempts to justify the fees, Parrish was never able to account for the $10,000 advance fee paid to him. When all else failed, a hearing was conducted before the fee arbitration committee. As a result of this hearing, Parrish was ordered to return to Ward $8467.46 as his unearned retainer. The amount so ordered to be refunded to Ward has yet to be paid.

Rule 32:1.15(f) incorporates rule 45.7(4) and requires attorneys to notify their clients in writing and provide contemporaneous accounting when the attorney withdraws fees from the trust account. Parrish did not advise Ward contemporaneously as to when he withdrew fees, and he did not provide Ward a full accounting regarding these fees. We find Parrish violated these rules.

Parrish also violated rules 32:1.15(d) and (f), 32:1.16(d), and 45.7(4) in the Bixler matter based upon the same type of conduct set forth above. While he did properly deposit the advance fees into a client trust account, he failed to notify Bixler in writing and provide a contemporaneous accounting when he withdrew fees from the client's trust account and failed, upon the termination of his representation of Bixler, to provide a prompt accounting and a refund of any unearned fees. In each case, Parrish has violated the Iowa Rules of Professional

Conduct as set forth above, and the Iowa Court Rules as alleged by the board and found by the commission.

**B. Rule 32:8.4(c).** This rule states, "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]" Iowa R. Prof'l Conduct 32:8.4(c). The board contends Parrish violated this rule by repeatedly misrepresenting to Ward that a refund was forthcoming. We require a reasonable level of scienter to find an attorney violated rule 32:8.4(c). *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011). "In the legal sense, a misrepresentation usually requires something more than negligence." *Id.* Accordingly, an attorney must act with some level of scienter greater than negligence to violate rule 32:8.4(c). *Id.*

We have previously found that Parrish violated rules 32:1.15(d) and 32:1.16(d) when he failed to promptly render an accounting to his client and promptly refund any unearned fees. When an attorney's conduct violates a specific rule involving dishonesty, fraud, deceit, or misrepresentation, we will not find the same conduct to also violate a general rule prohibiting that conduct, such as rule 32:8.4(c). *Id.* While the court finds no reasonable excuse for Parrish's failure to promptly refund retainers to either Ward or Bixler, from the record we cannot conclude Parrish made knowing misrepresentations of material facts by failing to return the retainers as promised. Therefore, we find Parrish did not violate this rule.

**C. Rule 32:8.4(d).** "It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice[.]" Iowa R. Prof'l Conduct 32:8.4(d). There is no typical form of conduct that prejudices the administration of justice. Generally, acts that have been deemed prejudicial to the administration of justice have " 'hampered the

efficient and proper operation of the courts or of ancillary systems upon which the courts rely.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wright*, 758 N.W.2d 227, 230 (Iowa 2008) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Borth*, 728 N.W.2d 205, 211 (Iowa 2007)).

> Examples of conduct prejudicial to the administration of justice include paying an adverse expert witness for information regarding an opponent's case preparation, demanding a release in a civil action as a condition of dismissing criminal charges, and knowingly making false or reckless charges against a judicial officer.

*Templeton*, 784 N.W.2d at 768.

Under the facts and circumstances involved in this case, this court cannot conclude that Parrish's failure to adhere to the requirements involving his client trust account and fees hampered the efficient and proper operation of the courts or of an ancillary system upon which the courts rely. Accordingly, we find Parrish's conduct did not violate this rule.

### IV. Discipline.

"There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley* (*Earley I*), 729 N.W.2d 437, 443 (Iowa 2007). In determining an appropriate sanction, we consider:

> [T]he nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008). The court has recognized, "Where there are multiple

violations of our disciplinary rules, enhanced sanctions may be imposed." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Alexander*, 574 N.W.2d 322, 327 (Iowa 1998). When determining appropriate discipline, this court also considers aggravating and mitigating circumstances present in the disciplinary action. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley* (*Earley II*), 774 N.W.2d 301, 308 (Iowa 2009). Significant aggravating factors for punishment include " 'the existence of multiple instances of neglect, past disciplinary problems, and other companion violations.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 332 (Iowa 2009) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen*, 712 N.W.2d 101, 106 (Iowa 2006)).

When dealing with client trust account violations, our sanctions have ranged from a public reprimand when the violation was relatively minor and isolated, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Piazza*, 756 N.W.2d 690, 700 (Iowa 2008), to license suspension when the violation involved poor office management and neglect, *Earley I*, 729 N.W.2d at 443–44, to license revocation when the violation amounted to a misappropriation of client funds, *Earley II*, 774 N.W.2d at 309. Based upon the record in this case, we are not faced with a single incident, nor are we dealing with a case of misappropriation. Therefore, the suspension cases are most helpful in determining the ultimate sanction to impose in this case. Cases involving suspension for client trust account violations range from two months in less serious cases, *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Plumb*, 589 N.W.2d 746, 749 (Iowa 1999), to eighteen months in very severe cases when the violations combine with multiple instances of neglect and other ethical violations, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Plumb*, 766 N.W.2d 626, 634–35 (Iowa 2009).

The commission has recommended that Parrish receive a public reprimand. The board has recommended that Parrish's license to practice law be suspended for a period of no less than four months. In considering aggravating and mitigating circumstances, the prior disciplinary history of an attorney is a factor we must consider in imposing discipline. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lemanski*, 606 N.W.2d 11, 14 (Iowa 2000). Since that decision, this court has repeatedly considered prior admonitions as aggravating circumstances that relate directly to an appropriate sanction. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cohrt*, 784 N.W.2d 777, 783 (Iowa 2010) ("A prior admonition is properly considered in determining discipline, especially when it involves the same type of conduct as the conduct subject to discipline."); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barry*, 762 N.W.2d 129, 132, 140 (Iowa 2009) (noting prior disciplinary history included private admonition for a conflict of interest); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 821 (Iowa 2007) (prior discipline included two private admonitions); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morrison*, 727 N.W.2d 115, 117, 120 (Iowa 2007) (included in the parties' stipulation was a prior admonition for similar conduct).

Without setting forth specific details, Parrish has been the subject of six private admonitions dating back to December 2001. The genesis of each of the admonitions involved Parrish's failure to provide an itemization of services provided, and in at least two of the previous admonitions, the conduct involved the withdrawal of funds from a client trust account in excess of the fees that were actually earned. While an error in judgment or mere negligence by an attorney is not an appropriate basis for discipline, Parrish's conduct over the last ten years

has now developed into a pattern of violating the Iowa Rules of Professional Conduct and the rules of this court relating to the administration of trust accounts. An additional aggravating circumstance involves his failure, now over many years, to return funds to his former clients. In the case of Ward, his refusal or inability to return these funds is now approaching five years. While less egregious due to the amount in question, it is instructive that Parrish likewise has still not refunded the unearned fees to Bixler.

We also consider any mitigating circumstances. Parrish has been involved in providing pro bono legal services to individuals, and he is also active and involved in the community. Additionally, Parrish has indicated that he is attempting to take remedial actions to improve the billing and accounting problems that have plagued him in his practice. This has included the firm updating both its billing system and case management software so that this conduct will not be repeated. However, as noted by counsel, none of these remedial actions excuse Parrish's failure to actually account for the time billed to his clients, to withdraw the proper funds based on the billings, or to provide a contemporaneous notice of withdrawals to his client. Finally, the court notes that Parrish has taken full responsibility for his failures, and Parrish cooperated fully in responding to the complaints.

Having considered all the aggravating and mitigating circumstances, and in our de novo review, a public reprimand under this set of facts would not be adequate. Such a sanction might have been appropriate had this case involved only a single incident of misconduct. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Sobel*, 779 N.W.2d 782, 789–90 (Iowa 2010) (publicly reprimanding attorney for failure to provide accounting for an advance fee payment); *Wright*, 758 N.W.2d at

231 (finding an attorney who failed to dismiss an appeal after his client was unable to raise enough funds warranted a public reprimand); *Piazza*, 756 N.W.2d at 700 (attorney received public reprimand for failing to place advance fee payment in trust account and to provide an accounting); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 730 N.W.2d 202, 207–08 (Iowa 2007) (publicly reprimanding attorney for failing to provide an accounting and neglect in timely closing an estate). Unfortunately, the recurring pattern of conduct in this case warrants a stiffer sanction—namely a suspension.

## V. Disposition.

We have carefully considered the respondent's current violations, his prior history of ethical infractions, and his current fitness to practice law. Accordingly, we suspend Parrish's license to practice law in the State of Iowa for sixty days. This suspension applies to all facets of the practice of law. *See* Iowa Court Rule 35.12(3). Parrish must comply with Iowa Court Rule 35.22 dealing with the notification of clients and counsel. Parrish is also ordered to refund to Ward the amount of $8467.46 and to Bixler the sum of $187.51. Prior to reinstatement, Parrish shall provide to the court proof that these sums have been paid. Parrish is also ordered to attend continuing education with respect to billing, timekeeping practices, and client trust accounts, and to submit proof of his attendance to the court prior to reinstatement. The costs of this action are taxed to Parrish pursuant to Iowa Court Rule 35.26. Absent an objection by the board, and under the conditions set forth above, we shall reinstate Parrish's license to practice law on the day after the sixty-day suspension period expires. *See* Iowa Ct. R. 35.12(2).

**LICENSE SUSPENDED.**