# IN THE SUPREME COURT OF IOWA

No. 22–0376

Submitted September 15, 2022—Filed November 10, 2022

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**BONNIE J. HEGGEN,**

Appellant.

On appeal from the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends a six-month suspension for the attorney's violation of ethical rules. **LICENSE SUSPENDED.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellant.

Alexis W. Grove, Des Moines, for appellee.

**McDONALD, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged attorney Bonnie Heggen with violating multiple rules of professional conduct related to the management of her client trust account and a retainer paid by a client. A division of the Iowa Supreme Court Grievance Commission found Heggen violated several rules of professional conduct but found the Board failed to prove Heggen violated several others, including Iowa Rules of Professional Conduct 32:1.5(a) (prohibiting an attorney from charging or collecting an unreasonable fee) and 32:8.4(b) (prohibiting an attorney from committing a criminal act "that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects"). The commission recommended suspending Heggen's license for six months. Heggen filed this appeal. She challenges only the commission's recommended sanction. The Board cross-appealed the commission's recommendation. The Board argues Heggen converted client funds, in violation of Iowa Rules of Professional Conduct 32:1.5(a) and 32:8.4(b), and the appropriate sanction should be the revocation of Heggen's license to practice law.

I.

This court reviews attorney disciplinary proceedings de novo. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kozlik*, 943 N.W.2d 589, 594 (Iowa 2020). The Board must prove each alleged ethical violation by a convincing preponderance of the evidence. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Rhinehart*, 953 N.W.2d 156, 162 (Iowa 2021). "A convincing preponderance of the evidence lies between the preponderance-of-the-evidence standard in a civil case and the

reasonable-doubt standard in a criminal case." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Noyes*, 936 N.W.2d 440, 442 (Iowa 2019).

## II.

Heggen was admitted to practice law in 2004. During the period relevant to this matter, Heggen worked as a sole practitioner. A focus of Heggen's practice was special education law. She assisted families and students in securing special education services as required by federal and state law. The attorney–client relationship at issue in this proceeding involves Heggen's representation of a family with a student who required special education services.

The first set of disciplinary charges at issue relate to Heggen's management, or more accurately, mismanagement of her client trust account. In 2018, the Iowa Supreme Court Client Security Commission (CSC) audited Heggen's client trust account. CSC determined that Heggen had failed to maintain a check register for her client trust account. It also determined she had not performed or maintained records of the monthly triple reconciliations of her client trust account. The auditor explained to Heggen the reconciliation process, gave her a reconciliation worksheet, and explained the importance of proper accounting.

The training did not take. In 2020, CSC conducted a second audit of Heggen's client trust account. The 2020 audit found Heggen violated multiple client trust account rules. She failed to deposit funds into her client trust account. She failed to maintain a receipts and disbursements journal. She failed to maintain client ledger cards. She failed to retain records of electronic transfers

from her client trust account. She withdrew fees from her client trust account before the fees were earned. She failed to notify clients in writing of withdrawals from her client trust account. And she failed to perform monthly triple reconciliations of her trust account. Despite Heggen's ongoing failure to reconcile her client trust account on a monthly basis, she filed annual statements with CSC in which she represented that she had done so.

The second set of disciplinary charges against Heggen arise out of her representation of Joann and Robert Burgett Jr. On January 10, 2020, the Burgetts retained Heggen to represent them in a dispute with their local school district. The Burgetts entered into a written attorney fee contract with Heggen. The attorney fee contract provided the Burgetts were to pay $275 per hour for all services performed. The attorney fee contract provided the Burgetts were to pay a retainer of $3,000 plus an advance of $50 for expenses. The attorney fee contract also contained an unusual provision that provided "[i]f attorney fee is paid in full by district, Clients receive refund of retainer advanced in the amount of $3000.00."

On January 10, pursuant to the attorney fee contract, the Burgetts paid Heggen the $3,000 retainer and the $50 advance for expenses. Heggen deposited the funds into her client trust account the same day. She then withdrew the funds prior to earning the fees or incurring the expenses. On the same day Heggen deposited the funds, she withdrew $2,555.25 from her client trust account. On January 16, Heggen withdrew another $475. Heggen did not notify

the Burgetts of these withdrawals. Heggen's records show she did not perform any billable work for the Burgetts until January 20.

Heggen's representation of the Burgetts was successful. The Burgetts' dispute with the district was resolved at a mediation occurring on May 22. The Burgetts agreed to dismiss their complaint against the district and release all their claims. The Burgetts received no financial consideration as part of the agreement. In exchange for the dismissal and release, the district agreed to provide the Burgetts' son with all of the special education services requested. The district also agreed to pay "attorney's fees in the amount of $6765.00 to Bonnie Heggen." Because the district agreed to pay Heggen's fees directly to Heggen, the Burgetts were contractually entitled to receive a refund of $3,000 from Heggen after she was paid.

On May 24, two days after the successful mediation, Heggen wrote an email to the Burgetts regarding the refund. Heggen stated she would refund the $3,000 as soon as she received payment from the district's insurer. Heggen said the process usually took two to three weeks. Heggen received her payment from the district's insurer on or about June 3.

On July 1, Joann Burgett emailed Heggen about the refund. Heggen replied the same day, stating, "I should have it for you by the 15th." Heggen did not disclose to Joann that the district's insurer had already paid Heggen. Heggen did not refund the money by July 15.

On July 21, Robert Burgett Jr. telephoned Heggen and left her a voicemail about the refund. Two days later, on July 23, Heggen called Joann and left a

voicemail. Heggen stated that she needed to speak "about the situation" and that she had encountered a "huge problem" causing her to take "a little longer than [she] expected to get everything . . . straightened around." Heggen said the Burgetts would receive payment in "another two to three weeks." Heggen stated the delay was caused by things "completely out of [her] control." After receiving the July 23 voicemail from Heggen, Joann called Heggen back. Heggen explained the delay was due to unexpected personal expenses—she had spent her payment on a hot water heater and an air conditioner.

Joann phoned Heggen again on August 5. During this call, Heggen stated she would "try to get [the Burgetts] $2,000" but did not know when the Burgetts would receive the remaining $1,000. Joann sent Heggen a follow-up email on August 11. Joann requested the refund as "outlined in our said contract when we hired you." Heggen replied the same day and stated the following:

> Joann, you cannot be paid with what I don't have; you and I are waiting for [the school district's insurer] to cut me a check for the fee they agreed to pay. There were outstanding issues that had to be worked through on behalf of this client. I have a phone call scheduled with opposing counsel at 3 o'clock today. We will finalize the last issue and I will file the dismissal this afternoon. So the check will be cut [in] two or three days. Unfortunately, I don't control that end. As soon as I have it, you will be reimbursed. Try to bear in mind I am currently working on your case again now.

Joann replied to this email and expressed confusion about whether Heggen had, in fact, already been paid by the school district. In response, Heggen left Joann a voicemail stating that she had "spent money on things [she] had to spend money on" and that the Burgetts would receive their money in "a few more

days." Heggen stated she had requested the school district's insurer "cut the check ASAP."

On August 26, Heggen paid the Burgetts their refund pursuant to the parties' written attorney fee contract.

The Board filed its complaint against Heggen in March 2021. The commission held a two-day hearing in November. The commission found Heggen violated Iowa Rules of Professional Conduct 32:1.15, subsections (a), (c), and (d), and 32:8.4(c) as well as Iowa Court Rules 45.1; 45.2, subsections (2), (3)(*a*)(1), (3)(*a*)(2), and (3)(*a*)(9); and 45.7, subsections (3) and (4). The commission found the Board failed to prove violations of Iowa Rules of Professional Conduct 32:1.5(a) (unreasonable fee) and 32:8.4(b) (criminal act). The commission recommended a six-month suspension of Heggen's license to practice law.

### III.

We first evaluate the charges against Heggen related to her mismanagement and maladministration of her client trust account. We find Heggen violated chapter 45, which sets forth the rules governing client trust accounts. Specifically, we find Heggen violated Iowa Court Rules 45.1; 45.2, subsections (2), (3)(*a*)(1), (3)(*a*)(2), and (3)(*a*)(9); and 45.7, subsections (3) and (4). Heggen does not contest the violations, conceding her business practices were "in disarray." We thus see no need to discuss the alleged violations in any detail. In short, a convincing preponderance of the evidence shows Heggen, among other things, failed to maintain client ledger cards, failed to maintain a receipts and disbursements journal, failed to deposit client funds in her client trust

account, failed to promptly deliver client funds to the Burgetts, failed to maintain records related to her client trust account, failed to perform monthly triple reconciliations, withdrew money from her client trust account before it was earned, and failed to notify clients before making withdrawals from her client trust account.

We also find Heggen violated rule 32:1.15(f), which states "[a]ll client trust accounts shall be governed by chapter 45 of the Iowa Court Rules." The commission concluded rule 32:1.15(f) "is not an ethics rule which stands on its own [but] is merely the provision which incorporates the client trust account rules into the ethical standards." We disagree. "[A] violation of an attorney's obligations under chapter 45 also constitutes a violation of rule 32:1.15(f)." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Eslick*, 859 N.W.2d 198, 201 (Iowa 2015).

## IV.

We next evaluate the disciplinary charges against Heggen arising out of her representation of the Burgetts. The commission found Heggen violated rule 32:1.15, subsections (a), (c), and (d), as well as rule 32:8.4(c), but the commission also found the Board failed to prove by a convincing preponderance of the evidence that Heggen's conduct violated rules 32:1.5(a) and 32:8.4(b). We address the uncontested violations first and the contested violations second.

## A.

The commission found Heggen violated rule 32:1.15, subsections (a), (c), and (d). Heggen does not contest these violations. We agree the Board proved these violations by a convincing preponderance of the evidence.

The evidence establishes Heggen violated rule 32:1.15(a). That provision provides:

> A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation.

Iowa R. Prof'l Conduct 32:1.15(a). Heggen withdrew fees from her client trust account prior to earning the fees. She did this on multiple occasions. Heggen also intermingled client funds, firm funds, and personal funds, although perhaps inadvertently due to failure to maintain proper accounting records.

The evidence also establishes that Heggen violated rule 32:1.15(c). That rule provides, "A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." *Id.* r. 32:1.15(c). Heggen violated this rule when she withdrew fees from her client trust account before earned. *See, e.g., Comm. on Prof'l Ethics & Conduct of the Iowa State Bar Ass'n v. O'Connor*, 329 N.W.2d 1, 4 (Iowa 1983) (en banc).

A convincing preponderance of the evidence also shows Heggen violated Iowa Rule of Professional Conduct 32:1.15(d), which provides:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the

client or third person, shall promptly render a full accounting regarding such property.

Here, pursuant to the Burgetts' settlement agreement with the district, the district paid Heggen. Pursuant to the written attorney fee contract with the Burgetts, "if" Heggen was "paid in full by district," then Heggen was contractually obligated to refund $3,000 to the Burgetts. Pursuant to rule 32:1.15(d), Heggen was required to "promptly deliver" the contractual refund to the Burgetts. While Heggen received payment from the district on June 3, she did not refund the $3,000 until August 26. An almost-three-month delay in issuing a contractual refund is not prompt. This is particularly true where, as here, the clients repeatedly contacted the attorney to inquire about the delayed refund.

B.

We find Heggen violated Iowa Rule of Professional Conduct 32:8.4(c). This rule provides it is misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." *Id.* "[A]n attorney must act with some level of scienter greater than negligence to violate rule 32:8.4(c)." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 587 (Iowa 2011). "An attorney's 'casual, reckless disregard for the truth' also establishes sufficient scienter to support a violation of the rule." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Muhammad*, 935 N.W.2d 24, 38 (Iowa 2019) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 656 (Iowa 2013)).

Heggen violated the rule in multiple respects. She made misrepresentations to CSC when she falsely stated on three annual reports that she had completed monthly triple reconciliations of her client trust account when

she had not. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Vandel*, 889 N.W.2d 659, 668–69 (Iowa 2017); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Wengert*, 790 N.W.2d 94, 100 (Iowa 2010).

Heggen also engaged in deceitful and dishonest conduct in her dealings with the Burgetts after receiving payment from the district's insurer. "When dealing with a violation of rule 32:8.4(c), the key question we must answer is whether the effect of the lawyer's conduct is to mislead rather than to inform." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Haskovec*, 869 N.W.2d 554, 560 (Iowa 2015). Heggen made misleading statements and misrepresentations to the Burgetts when they inquired about their contractual refund. In August, Heggen sent Joann an email in which she stated "you and I are waiting for [the school district's insurer] to cut me a check for the fee they agreed to pay." Later, in a voicemail, Heggen stated she was trying to get the insurer to "cut the check ASAP." Both statements implied Heggen had not yet received her payment from the district's insurer. However, at the time Heggen made these statements, she had already received her payment from the district's insurer. Heggen clearly acted with a level of scienter greater than negligence in violation of the rule. *See Parrish*, 801 N.W.2d at 587.

## C.

We now turn to the contested violations in the Board's cross-appeal. The Board contends that Heggen violated rule 32:1.5(a). The rule provides, "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an

unreasonable amount for expenses, or violate any restrictions imposed by law."
Iowa R. Prof'l Conduct 32:1.5(a).

We have held that a lawyer *in a probate matter* who takes a fee prematurely or without court authorization violates rule 32:1.5(a) because the collection of the fee violates a restriction imposed by law, namely statutes and court rules governing probate fees. *See* Iowa R. Prof'l Conduct 32:1.5(a), cmt. 1 ("A fee that is otherwise reasonable may be subject to legal limitations, of which the lawyer should be aware. For example, a lawyer must comply with restrictions imposed by statute or court rule on the timing and amount of fees in probate."); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Saunders*, 919 N.W.2d 760, 763 (Iowa 2018) (stating lawyer's premature collection of probate fee violated court rule 7.2(4) and thus violated rule 32:1.5(a), and collecting cases); *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo*, 619 N.W.2d 333, 337 (Iowa 2000) (en banc) (stating Iowa probate law prohibits taking early fee without court approval and taking unapproved fee is illegal); 16 Gregory C. Sisk & Mark S. Cady, *Iowa Practice Series: Lawyer and Judicial Ethics* § 5:5(b)(3), at 211 & n.1 (2019 ed. 2019) [hereinafter Sisk & Cady] (stating rule is applicable when lawyers take probate fees prematurely, and citing cases).

Outside probate proceedings, we have also held a lawyer violates rule 32:1.5(a) by retaining an unearned fee. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. O'Brien*, 971 N.W.2d 584, 590 (Iowa 2022) (holding attorney violated rule 32:1.5(a) when he took a retainer, filed a pleading, "just quit, wholly and abruptly," and "refused to return any of the retainer"); Sisk & Cady § 5:5(f)(1), at

224 (discussing rule 32:1:5(a) and stating the rule requires "any advance payment for the performance of contemplated legal services is to be refunded if the work is not performed"). This latter line of cases makes sense because retention of an unearned fee is necessarily an "unreasonable fee."

The Board contends that in all circumstances an attorney's withdrawal of fees prior to the time the fees have been earned, standing alone, violates rule 32:1.5(a). In support of its argument, the Board relies on *Iowa Supreme Court Attorney Disciplinary Board v. Parrish*, 801 N.W.2d 580. But *Parrish* does not support the Board's argument. *Parrish* involved an attorney's handling of fees in two separate client matters. 801 N.W.2d at 586. The first client paid the attorney a $10,000 retainer for representation in a criminal case. *Id.* at 584. After the termination of the representation, a fee arbitration committee found the attorney had earned less than $2,000 in fees, but the attorney failed to refund the remaining balance. *Id.* at 584–85. The second client fired the attorney and requested a refund of the unused portion of a $5,000 retainer. *Id.* at 585. The attorney failed to refund the unearned portion of the retainer to the client. *Id.* We concluded the attorney collected an unreasonable fee in violation of the rule because the attorney withdrew the entire advance and "then subsequently failed to return the unearned portions." *Id.* at 586. It was the lawyer's retention of the unearned fees that constituted an unreasonable fee and not the lawyer's premature withdrawal of fees subsequently earned.

With that understanding, we conclude the Board failed to prove Heggen charged an "unreasonable fee" in violation of rule 32:1.5(a). It is not disputed

that Heggen withdrew nearly the entire retainer paid by the Burgetts before she earned any fees, but it is also not disputed that Heggen subsequently earned the fees and refunded $3,000 to the Burgetts after being paid by the district's insurer. After Heggen refunded the retainer, the Burgetts ended up paying only $50. Generally speaking, an attorney's withdrawal of a fee from a client trust account prior to the time it is earned, standing alone, does not constitute a violation of rule 32:1.5(a). *See O'Brien*, 971 N.W.2d at 590 ("Failing to refund unearned fees violates this rule."). As discussed above, rules 32:1.15(c) and 45.7 directly address an attorney's early withdrawal of unearned fees and not incurred expenses. There is no reason to conflate those rules with this separate rule.

### D.

The Board also contends Heggen violated rule 32:8.4(b). The rule states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Cond. 32:8.4(b). "When assessing whether a lawyer has violated rule 32:8.4(b), we consider '[t]he nature and circumstances of the act . . . to determine if the commission of the criminal act reflects adversely on the attorney's fitness to practice law.'" *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Aeilts*, 974 N.W.2d 119, 125 (Iowa 2022) (alteration and omission in original) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 40 (Iowa 2011)). A formal criminal charge or conviction is not required to find a violation under rule 32:8.4(b). *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Thomas*, 844 N.W.2d 111, 116 (Iowa 2014). However, the Board must still establish by a

convincing preponderance of the evidence that the attorney committed "a criminal act."

The Board contends that Heggen committed theft, as defined in Iowa Code section 714.1 (2020). As relevant here, Iowa Code section 714.1 provides:

> A person commits theft when the person does any of the following:
>
> 1. Takes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof.
>
> 2. Misappropriates property which the person has in trust, or property of another which the person has in the person's possession or control, whether such possession or control is lawful or unlawful, by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property, or conceals found property, or appropriates such property to the person's own use, when the owner of such property is known to the person.

The commission found the Board failed to prove Heggen committed the criminal act of theft. Relying on section 714.1(1), the commission found Heggen did not commit theft because she did not have the "intent to deprive" the Burgetts of the retainer. The Board counters that this was error. Relying on section 714.1(2), the Board contends Heggen misappropriated the Burgetts' property. As the Board explains it:

> By the time of mediation, Heggen had already paid herself $3000 of those fees, meaning she was only entitled to an additional $3765. The rest of it belonged to the Burgetts. When the check came from the insurance company, Heggen took and used the entire $6765. Although Heggen had only earned $6765 in fees, she paid herself a total of $9765. Heggen paid herself her attorney fees twice, and in so doing, she stole from the Burgetts.

Like the commission, we conclude on the unique facts and circumstances of this case that the Board failed to meet its evidentiary burden in proving Heggen committed the criminal act of theft. Iowa Code section 714.1(2) defines theft as misappropriation of "property which the person has in trust, or property of another which the person has in the person's possession or control." In attorney disciplinary cases, "[w]e use the same definition of misappropriation as the criminal act." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Suarez-Quilty*, 912 N.W.2d 150, 158 (Iowa 2018). The theft statute requires proof the specific property allegedly stolen—in this case, the check from the district and the proceeds therefrom—was property of another either held in trust by the perpetrator or in the possession or control of the perpetrator. *See State v. Caslavka*, 531 N.W.2d 102, 105 (Iowa 1995) (discussing theft by misappropriation); *State v. Galbreath*, 525 N.W.2d 424, 426–27 (Iowa 1994) (same).

The Board failed to prove by a convincing preponderance of the evidence that Heggen misappropriated the Burgetts' property. Here, Heggen and the Burgetts entered into an unusual attorney fee contract. The Burgetts agreed to pay a retainer of $3,000. The attorney fee contract then gave the Burgetts a right to receive a refund in the amount of $3,000 "*if* attorney fee is paid in full by district." (Emphasis added.) The Burgetts' right to receive payment was thus contractual and contingent upon Heggen first being paid by the district. Heggen successfully mediated the matter for the Burgetts. Like the attorney fee contract, the settlement agreement was unusual. The settlement agreement provided no financial consideration to the Burgetts. Pursuant to the terms of the settlement

agreement, the school district was to pay "the amount of $6,765.00 *to Bonnie Heggen.*" (Emphasis added.)

Thus, when the insurer sent a check directly to Heggen, made payable to Heggen, and for Heggen, she had legal title to and possession of the check as well as the proceeds from the same. The Burgetts had no legal right to the check or the proceeds that could support a claim of misappropriation of *their* property. *See e.g.*, *Caslavka*, 531 N.W.2d at 105 (reversing theft conviction and explaining misappropriation); *Galbreath*, 525 N.W.2d at 427 (same); *State v. Topic*, No. 13–0836, 2014 WL 3748206, at *2 (Iowa Ct. App. July 30, 2014) (reversing theft conviction where $6,000 check at issue did not belong to alleged victim). Indeed, if the district had failed to pay Heggen pursuant to the terms of the settlement agreement, Heggen—and not the Burgetts—would have the right to sue the district for the money owed Heggen. In short, under the unique facts and circumstances of this case, involving both an unusual attorney fee contract and an unusual settlement agreement, it was Heggen's check, and it was Heggen's money.

Our conclusion in this case is in line with *Larew v. Hope L. Firm, P.L.C.*, 977 N.W.2d 47 (Iowa 2022). *Larew* involved a dispute over a contingent fee award between a law firm and an attorney who was formerly of counsel at the law firm. *Id.* at 51–52. The attorney alleged the firm committed conversion by placing the disputed contingent fee in its business account rather than in a trust account. *Id.* at 54–55. The firm countered that, per the of-counsel agreement between the attorney and the firm, the fees earned by the attorney belonged to the firm. *Id.*

at 55. We rejected the attorney's conversion claim since the right to recover a portion of the contingent fee from the firm was contractual in nature. *Id.* at 62–63. As we stated, "[N]o conversion claim exists where the dispute arises solely out of contractual obligations." *Id.* at 63. While the attorney had a contractual right to some amount of money as a result of representing the client and winning the contingent fee, the attorney had no right to the specific money received by the firm as a contingent fee. *See id.* at 61.

The Board points to other decisions of this court where we sanctioned attorneys for misappropriating client funds, but those cases are distinguishable. Each case involved a lawyer misappropriating what was undisputedly other people's property. *See, e.g.*, *Kozlik*, 943 N.W.2d at 595–96 (concluding attorney violated rule by paying himself funds of estate which were held in trust for estate beneficiaries); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Den Beste*, 933 N.W.2d 251, 254 (Iowa 2019) (concluding attorney violated rule by retaining fees that belonged to his law firm); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kowalke*, 918 N.W.2d 158, 162 (Iowa 2018) (concluding attorney violated rule by paying assets of estate to himself); *Suarez-Quilty*, 912 N.W.2d at 155 (holding attorney improperly failed to return advance payment to client); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Guthrie*, 901 N.W.2d 493, 498–99 (Iowa 2017) (holding attorney misappropriated client funds by billing client for unperformed work); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kelsen*, 855 N.W.2d 175, 185 (Iowa 2014) (revoking license where attorney converted $7,500 cost retainer paid by client); *Thomas*, 844 N.W.2d at 117 (holding attorney misappropriated client's

settlement money for his own purposes); *Wengert*, 790 N.W.2d at 100 (holding attorney misappropriated client's settlement funds intended to pay subrogation obligation); *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Bell*, 650 N.W.2d 648, 655 (Iowa 2002) (finding attorney misappropriated funds by embezzling from organization for which he acted as treasurer).

Our decision on the unique facts of this case does not call into question our cases involving the conversion and theft of other people's property. We simply hold the Board failed to meet its evidentiary burden in proving Heggen engaged in theft or conversion of her clients' funds given the unique combination of contractual arrangements presented here. The Board thus failed to prove Heggen committed a criminal act in violation of rule 32:8.4(b).

### E.

In sum, on our de novo review, we find and conclude Heggen violated Iowa Rules of Professional Conduct 32:1.15, subsections (a), (c), (d), and (f), and 32:8.4(c) as well as Iowa Court Rules 45.1; 45.2, subsections (2), (3)(*a*)(1), (3)(*a*)(2), and (3)(*a*)(9); and 45.7, subsections (3) and (4). The Board failed to prove Heggen violated Iowa Rule of Professional Conduct 32:1.5(a) or 32:8.4(b).

### V.

Having concluded Heggen violated several rules of professional conduct, we now must consider the appropriate sanction. "There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Earley*,

729 N.W.2d 437, 443 (Iowa 2007). "We do, however, seek a degree of consistency in our disciplinary cases with respect to sanctions." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 268 (Iowa 2012). "In determining an appropriate sanction, we consider 'the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law,' as well as any aggravating and mitigating circumstances." *Earley*, 729 N.W.2d at 443 (quoting *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Ramey*, 639 N.W.2d 243, 245 (Iowa 2002)).

Heggen acknowledges some level of discipline is warranted and suggests a public reprimand. There are some mitigating factors in this case. Heggen has no disciplinary history. *See, e.g.*, *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kersenbrock*, 821 N.W.2d 415, 422 (Iowa 2012). As the commission found, she "fully cooperated with the Board's investigation" and admitted "some of her wrongdoing." *See Eslick*, 859 N.W.2d at 202 ("[R]emorse and cooperation generally mitigate our sanction."). She also provides legal services to students with special education needs, an underserved and vulnerable population. *See, e.g., Iowa Sup. Ct. Att'y Disciplinary Bd. v. Santiago*, 869 N.W.2d 172, 182 (Iowa 2015) (noting as mitigating factor that attorney primarily represented underserved immigrant community). Heggen hired a bookkeeper after the 2020 CSC audit to avoid trust account violations in the future, although she failed to do so prior to that time because of the expense. *See, e.g., Iowa Sup. Ct. Att'y*

*Disciplinary Bd. v. Arzberger*, 887 N.W.2d 353, 369 (Iowa 2016) (stating attorney's implementation of "new office procedures" was mitigating factor).

Despite these mitigating factors, we conclude a more severe sanction is in order. In *Iowa Supreme Court Attorney Disciplinary Board v. Ricklefs*, the attorney was audited twice by CSC, with both audits revealing the attorney violated numerous provisions of chapter 45. 844 N.W.2d 689, 692–93 (Iowa 2014). The attorney made no meaningful effort to improve his practices after the first audit. *Id.* at 694. The attorney was also commingling personal funds in his client trust account in an apparent attempt to evade his creditors and misrepresented on CSC forms that he was complying with trust accounting rules. *Id.* at 695. Aggravating factors included the attorney's attempts to stall the second audit, failure to cooperate with the audit, and two prior public reprimands. *Id.* at 700. Mitigating factors included the lack of any harm to clients and the attorney's taking responsibility for his misconduct. *Id.* We suspended the attorney's license for three months, noting particularly the attorney's "complete failure to address the problems noted in the [first] audit." *Id.* at 702.

In *Iowa Supreme Court Attorney Disciplinary Board v. Parrish*, we disciplined an attorney for trust account violations and for repeatedly withdrawing unearned fees without contemporaneous notice, maintaining poor billing records, and failing to return an unearned retainer even after the fee dispute was submitted to arbitration. 801 N.W.2d at 586–87, 589. The attorney had also been subject to six prior private admonitions for misconduct. *Id.* at 589.

We concluded a sixty-day suspension was appropriate under the circumstances. *Id.* at 589–90.

In *Iowa Supreme Court Attorney Disciplinary Board. v. Kieffer-Garrison*, we suspended an attorney's license where, among other things, she neglected client matters and made misrepresentations to the client. 847 N.W.2d 489, 496 (Iowa 2014). In *Iowa Supreme Court Attorney Disciplinary Board v. Hamer*, we suspended an attorney's license for six months where he "acted with deceit" with respect to a client billing matter. 915 N.W.2d 302, 325–26 (Iowa 2018). Generally, "[s]anctions for violations involving dishonesty have ranged from a brief suspension of two months to revocation." *Kieffer-Garrison,* 847 N.W.2d at 496 (citing cases).

After reviewing the relevant authorities, we conclude this case is most comparable to *Iowa Supreme Court Attorney Disciplinary Board v. Morris*, 847 N.W.2d 428 (Iowa 2014). In that case, the attorney's "record-keeping and management deficits were severe and they persisted over a long period of time even after [CSC] intervened with an audit and provided information that should have facilitated compliance with the applicable rules." *Id.* at 436. As in this case, "Morris's violations extend[ed] beyond mere failure to observe rudimentary trust account record-keeping rules and mismanagement, however, as he engaged in dishonesty in representing that he regularly reconciled his trust account as required by a court rule." *Id.* at 437. In addition, Morris deposited client settlement funds into his trust account but failed to use the client's funds to

satisfy a subrogation claim. *See id.* at 431 n.2. We concluded that a six-month suspension was appropriate. *Id.* at 437.

As in *Morris*, there are several aggravating factors in this case. First, Heggen violated multiple ethical rules. "Where there are multiple violations of our disciplinary rules, enhanced sanctions may be imposed." *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Alexander*, 574 N.W.2d 322, 327 (Iowa 1998). Heggen's experience as an attorney, with more than fifteen years of practice under her belt at the time of the conduct at issue, is another aggravating factor. *See, e.g., Iowa Sup. Ct. Att'y Disciplinary Bd. v. Wright*, 758 N.W.2d 227, 231 (Iowa 2008). Harm to clients is an aggravating factor. In this case, Heggen harmed the Burgetts by not promptly returning the $3,000 to which they were contractually entitled, money the Burgetts needed to care for their children. *See, e.g., Iowa Sup. Ct. Att'y Disciplinary Bd. v. McCann*, 712 N.W.2d 89, 97 (Iowa 2006). Heggen's cavalier treatment of her client trust accounting obligations and her failure to remediate the issues identified by CSC after the 2018 audit are additional aggravating factors. *See Santiago*, 869 N.W.2d at 184 ("We expect lawyers to learn from their mistakes, and their failure to take to heart lessons learned through audits is an aggravating factor."); *Ricklefs*, 844 N.W.2d at 700 (finding attorney's continued disregard of trust account rules after audit was aggravating factor for sanctions).

Balancing this conduct against Heggen's clean disciplinary record and the other mitigating factors, and being particularly mindful of "the nature of the violations, the need for deterrence, protection of the public, [and] maintenance

of the reputation of the Bar as a whole," we believe a six-month suspension of Heggen's license to practice law is appropriate. *Ramey*, 639 N.W.2d at 245. This was the commission's recommended sanction.

VI.

We suspend Heggen's license to practice law with no possibility of reinstatement for six months. Pursuant to Iowa Court Rule 34.23(1), Heggen's suspension will commence ten days from the date of this decision. This suspension applies to all facets of the practice of law under Iowa Court Rule 34.23(3). Heggen must comply with the notification requirements to her clients in Iowa Court Rule 34.24. At the conclusion of this suspension, Heggen still must become compliant with Iowa Court Rule 41.4 and Iowa Court Rules 39.1 through 39.13 before she can be reinstated to practice law. We tax the costs of this action to Heggen under Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**